IN THE DISTRICT COURT OF PONTOTOC COUNTY

STATE OF OKLAHOMA

| | |
|---|---|
| PRE-PAID LEGAL SERVICES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. _____ |
| | ) |
| TODD CAHILL, | ) |
| | ) |
| Defendant. | ) |

## PETITION

Plaintiff, Pre-Paid Legal Services, Inc., now known as LegalShield ("LegalShield"), for its causes of action against Defendant Todd Cahill ("Defendant"), alleges and states as follows:

## FACTUAL ALLEGATIONS

### Parties

1. LegalShield is a corporation organized and existing under the laws of the State of Oklahoma, with its principal place of business in Pontotoc County, State of Oklahoma.

2. Defendant Todd Cahill is an individual residing in the State of California, but who has substantial and numerous contacts with the State of Oklahoma and Pontotoc County.

### LegalShield

3. LegalShield is a pioneer and national leader in the sale and marketing of legal service contracts (referred to as "Memberships") in the United States and Canada, through which members have access to the legal services specified in the membership contract via provider attorneys in each state or geographic region. LegalShield's Memberships are sold through a network marketing system by independent sales associates.



4.      LegalShield pioneered its products and marketing system beginning in 1972, and has since invested 40 years and substantial human and financial resources in the development of information and processes for the sale of Memberships through associates, and the facilitation of legal services to members. LegalShield's information and processes have independent economic value, both actual and potential, because they are not generally known or readily ascertainable to the public or competitors. LegalShield undertakes reasonable efforts to maintain the secrecy of this information and considers its processes, information and sales force to be trade secrets.

5.      One of LegalShield's several trade secrets is the names and identities of its sales associates and those in the downline of the network marketing system – i.e. sales associates who are recruited to LegalShield by an existing sales associate from whose Membership sales the existing associate also earns commissions. Those downlines are the framework through which LegalShield Memberships are sold and through which associates are trained and supported in their sales efforts. Thus, the names, identities and relationships of these associates constitute a valuable trade secret of LegalShield.

6.      The names and identities of LegalShield's sales associates are known only to LegalShield employees who need access to that information to manage the associate force and promote the product, and to other sales associates who work with those associates, all solely for the purposes of LegalShield's business. LegalShield seeks to maintain the confidentiality of the associate identities, including without limitation, a provision in the Associate Agreement that associate names are confidential and proprietary information of LegalShield, and are not to be used by any associate for any purpose other than promoting LegalShield either while at LegalShield or after departure.

## Defendant's Agreements With LegalShield

7. Defendant was an independent sales associate of LegalShield who entered into an Associate Agreement with LegalShield in 2004. Under his Associate Agreement, Defendant was authorized to sell and market LegalShield Memberships and recruit and train other associates to market and sell Memberships.

8. In the Associate Agreement Defendant entered into he specifically agreed that the identity of the downline is confidential, proprietary information belonging to LegalShield, and agreed that he would not use such information for any purpose during or after his relationship with LegalShield, other than promoting LegalShield. Defendant also agreed in the Associate Agreement that he would not proselytize, recruit or solicit in any manner any LegalShield Associate into any other company or organization during the term of the Associate Agreement and for 2 years after the date of any termination of the Agreement.

9. As of April 19, 2008, Defendant had risen through LegalShield's marketing structure to the point that he gained the status of Regional Manager in the San Diego, California region, and entered into a Regional Manager Agreement with LegalShield, a position he held until his resignation on August 10, 2012. Under the Regional Manager Agreement, Defendant received compensation in addition to that received under his Associate Agreement, and gained access to, and relationships and contacts with, other Associates, as well as information about the success of those Associates. In the Regional Manager Agreement, Defendant again specifically acknowledged his access to trade secret and confidential information of LegalShield including connection with, and the identity and success of, its sales associates, among other things, and agreed to maintain their confidentiality. He also agreed that he would not solicit any sales associates to another company for a period of 2 years after termination thereof.

10. In December 2011, Defendant also became Regional Vice-President of Illinois, and was subject to the terms of the LegalShield Regional Vice-President Agreement. In this position, though still an independent contractor, Defendant received additional compensation and duties and gained additional and important access to associate information across an even broader range of associates. As Regional Vice-President, Defendant again confirmed and agreed that the identity and success of LegalShield's sales associates was a trade secret and confidential information of LegalShield and that he would not solicit any sales associates to another company for a period of 2 years after termination thereof.

11. Defendant, through positions of trust and confidence with LegalShield, was a leader for LegalShield's business in both California and Illinois.

12. During this entire time Defendant has marketed and sold LegalShield Memberships and recruited and trained other sales associates to market and sell LegalShield Memberships, both as an independent associate under his Associate Agreement, and in additional positions of trust and confidence under the Regional Manager and Regional Vice-President Agreements. Under his Associate Agreement, Defendant received payment of commissions, including advance commissions, for his Membership sales as well as for the Membership sales of associates downline to him pursuant to the marketing plan incorporated into the Associate Agreement and certain amendments to the marketing plan. Defendant has received additional payments pursuant to the Regional Manager and Regional Vice-President Agreements.

**Defendant's Violations**

13. Beginning on August 9, 2012 and continuing to present, Defendant, contrary to the Associate Agreement, Regional Manager Agreement and Regional Vice-President Agreement, and in violation of LegalShield's trade secret rights, contacted LegalShield associates

who were downline to him at LegalShield to solicit them to join his new network marketing company, Nerium International. Defendant solicited LegalShield associates by texting and/or calling them on the pretext of calling a "mastermind" meeting of LegalShield leaders to discuss LegalShield business, and after gathering them with that false understanding, told them he was leaving to join another company and urged them to e-mail him to know where he was going. He also told them he would post information about his new business on his Facebook (to which these associates had access because of their LegalShield relationship) within an hour of the meeting. At that meeting, he made disparaging and untrue statements about LegalShield to discourage LegalShield associates about LegalShield and to lure them to Nerium.

14. Immediately prior to that meeting, having also gotten him there on the pretext of a LegalShield "mastermind" meeting, Defendant targeted and solicited another LegalShield Regional Manager to Nerium. He told the Regional Manager that Nerium really wanted him to come to Nerium, that they would make a special deal for him that they were not offering to others, and that they would place other "big name" LegalShield associates in his Nerium organization, among other solicitations. He also solicited the Regional Manager to join Nerium by disparaging LegalShield and its management and praising Nerium. He disparaged LegalShield's compensation plan and touted Nerium's compensation plan, among other statements.

15. Defendant's solicitation of this Regional Manager continued even after the meeting, continuing through at least August 12, 2012.

16. Additionally, Defendant has posted information about Nerium on a Facebook group site established for the leaders in Defendant's LegalShield organization (LS San Diego

Leaders and Elite Leaders) with the knowledge that the members of that group were LegalShield associates and with the intent that those associates join Nerium.

## FIRST CAUSE OF ACTION - BREACH OF CONTRACT

17. LegalShield incorporates by reference the allegations set forth in paragraphs 1-16.

18. The Associate Agreement, Regional Manager Agreement and Regional Vice-President Agreement prohibit the disclosure and use of LegalShield's trade secrets. The Associate Agreement requires Defendant to comply with LegalShield's Policies and Procedures, including specifically not using LegalShield associate information for any purpose other than the promotion of LegalShield, and not soliciting LegalShield associates to a new company for 2 years after termination. The Regional Manager and Regional Vice President Agreements also prohibit solicitation of LegalShield associates for 2 years after their termination.

19. In specific violation of his agreements, Defendant has used the associate trade secret information to solicit associates to his new network marketing company, Nerium.

20. By his conduct set forth above, Defendant has breached the Associate Agreement, the Regional Manager Agreement and the Regional Vice-President Agreement with LegalShield.

21. LegalShield has been and will be damaged by Defendant's multiple breaches of the Agreements in an amount not yet determined, but which is in excess of $75,000.

## SECOND CAUSE OF ACTION – MISAPPROPRIATION OF TRADE SECRETS BY DEFENDANT

22. LegalShield incorporates by reference the allegations set forth in paragraphs 1-21.

23. Defendant's actions described above are violations of 78 Okla. Stat. § 85 *et. seq*.

24. In particular, LegalShield derives independent economic value, actual or potential, from its associate names and downline relationships not being generally known to, and readily ascertainable by, other persons who can obtain economic value from their disclosure or

use. LegalShield has taken reasonable efforts under the circumstances to maintain that information as confidential.

25. Defendant has misappropriated LegalShield's trade secret information by using it to solicit LegalShield sales associates to another network marketing company when Defendant acquired the information under circumstances giving rise to a duty to maintain it as confidential and/or under an agreement with LegalShield to maintain its secrecy.

26. LegalShield has been damaged by these violations in an amount in excess of $75,000. Pursuant to 78 Okla. Stat. § 88, LegalShield is entitled to recover both the actual loss caused by the misappropriation as well as the unjust enrichment obtained by Defendant through the misappropriation. The conduct of Defendant in misappropriating LegalShield's trade secrets should also be enjoined pursuant to 78 Okla. Stat. § 87.

27. Further, Defendant's conduct in misappropriating the trade secrets has been willful and malicious. Thus, LegalShield should be awarded exemplary damages in twice the amount of its actual damages, pursuant to 78 Okla. Stat. § 88(B). Such willful misappropriation also warrants an award of attorney fees in favor of LegalShield, pursuant to 78 Okla. Stat. § 89(3).

### THIRD CAUSE OF ACTION - TORTIOUS INTERFERENCE WITH CONTRACT OR BUSINESS RELATIONS

28. Pre-Paid incorporates by reference the allegations set forth in paragraphs 1-27.

29. The associates solicited by Defendant to join a different network marketing company have an express contractual agreement – an Associate Agreement and/or other agreements – with LegalShield and LegalShield has an ongoing business relationship with the associates.

30. With knowledge of these relationships, Defendant has solicited those LegalShield associates to join a different network marketing company thereby depriving LegalShield of the full benefit of the contractual and other business relationships.

31. Defendant has taken such actions with the intent to injure LegalShield and benefit himself.

32. LegalShield believes that several associates have in fact left LegalShield to join the new network marketing company and/or are no longer devoting sales efforts under the LegalShield contract as a result of Defendant's conduct. Such conduct has resulted in direct financial injury to LegalShield which LegalShield is entitled to recover from Defendant.

33. Such conduct by Defendant has been intentional and malicious, thus also entitling LegalShield to punitive damages for Defendant's interference.

### REQUEST FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTION

34. LegalShield incorporates by reference the allegations set forth in paragraphs 1-33.

35. The above described conduct is ongoing. Defendant continues to contact and solicit LegalShield sales associates through the use of the confidential associate information Defendant obtained while he was an associate with LegalShield as well as continuing his other breaches and tortious conduct.

36. There is a substantial likelihood that LegalShield will prevail on the merits of its claims against Defendant.

37. If Defendant's conduct is not immediately restrained and enjoined, LegalShield will suffer irreparable harm because of the loss of sales associates through which its Memberships are sold and a resulting decrease in both the number of Memberships sold and in the number of new associates that would have been recruited by the solicited associates.

LegalShield further suffers irreparable harm in the ongoing disruption in its marketing efforts caused by the disruption within its associate force due to the violations by Defendant. The loss of sales associates and Membership, as well as the disruption of its sales force, cannot be adequately compensated in money.

38. Defendant will not suffer injury from the entry of the restraining order and injunction because he can solicit and recruit associates for his new company from the universe of other individuals who are not already LegalShield associates. Further, Defendant cannot properly claim injury from undertaking conduct he is contractually and legally prohibited from pursuing in any event.

39. The public interest is in favor of protecting the contractual relationships between parties, the protection of the economic value of a company built over 40 years from being raided by a former sales representative, and the integrity of the business relations between the parties.

40. Therefore, Defendant should be temporarily restrained, preliminarily enjoined, and then permanently enjoined from revealing LegalShield's trade secrets, from misappropriation of LegalShield's trade secrets, from using that information to solicit LegalShield associates to any other network marketing company at any time, and from soliciting LegalShield associates to another company, directly or indirectly, for a period of 2 years after his termination.

WHEREFORE, Plaintiff, LegalShield, requests that:

1. It be awarded actual damages in excess of $75,000;

2. It be awarded exemplary damages for Defendant's tortious conduct;

3. Defendant be temporarily restrained, preliminarily enjoined, and permanently enjoined from using LegalShield's trade secret information, and in particular the use of associate

names to solicit associates to a different company, and from soliciting and/or in any way contacting or communicating with LegalShield associates.

4. It be awarded it attorneys fees and costs in being forced to seek this relief.

On all of these grounds and requests for relief, LegalShield requests that judgment be entered in its favor and against Defendant.

~~BROOKE~~ S. MURPHY, OBA # 6524
TIMILA S. ROTHER, OBA # 14310

– Of the Firm –

CROWE & DUNLEVY
A Professional Corporation
20 North Broadway, Suite 1800
Oklahoma City, Oklahoma 73102
(405) 235-7735
(405) 272-5278 FAX

**ATTORNEYS FOR PLAINTIFF
PRE-PAID LEGAL SERVICES, INC.**

2351848.01

## VERIFICATION

I, John Long, Vice President of Regulatory Compliance, of Pre-Paid Legal Services, Inc., have reviewed the factual allegations of this Petition and verify that the statements contained therein are true and correct to the best of my knowledge and belief.

*[signature]*

Name: John Long
Title: Vice President of Regulatory Compliance

Subscribed and sworn to before me this 14th day of August, 2012.

*[signature]*
Notary Public

My Commission Expires:

Dec 13, 2015
[SEAL]

2351848.01

Notary Public Oklahoma
LISA Y. DANIEL
Commission # 11011170
Expires: December 18, 2015

11