IN THE DISTRICT COURT OF PONTOTOC COUNTY

STATE OF OKLAHOMA

PRE-PAID LEGAL SERVICES, INC.,           )
                                         )
        Plaintiff,                       )
                                         )
v.                                       )  Case No. _____
                                         )
TODD CAHILL,                             )
                                         )
        Defendant.                       )

## PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION, AND BRIEF IN SUPPORT

Plaintiff Pre-Paid Legal Services, Inc., now known as LegalShield ("LegalShield"), pursuant to 12 OKLA. STAT. § 1381 *et. seq.*, moves the Court for entry of a temporary restraining order for such period of time until the Court conducts a hearing on LegalShield's Motion for Temporary Injunction, made as part of this same Motion. In support of this Motion, LegalShield shows the Court as follows:

## FACTUAL BACKGROUND

1.      On August 14, 2012, LegalShield filed a verified Petition against Defendant Todd Cahill for breach of contract, misappropriation of trade secrets - Oklahoma Trade Secret Act, 78 Okla. Stat. § 85 *et. seq.*, and tortious interference with contractual relations. The verified allegations of that Petition are incorporated herein, and the substance of the allegations are described below. Evidence by Affidavit is also submitted in support of this Motion.

2.      LegalShield has notified Defendant of this lawsuit and Motion for Temporary Restraining Order and Temporary Injunction. LegalShield is serving the Summons and Petition but has also taken the following steps to notify Defendant of this Motion:

a.  E-mailed at 7:05 p.m. on August 13, 2012, notice of intent to have the Motion heard today to Mr. Cahill at the e-mail addresses at which LegalShield regularly communicated with him before the relationship was terminated (attached hereto as Exhibit 1);

b.  Immediately prior to the e-mail, attempted to telephone Mr. Cahill at the cell telephone number LegalShield had for him before the relationship was terminated, but was unable to leave a message for Mr. Cahill because his mailbox was full;

c.  Also around 7:00 p.m. on August 13, provided notice by telephone to attorney Gary Smith, who LegalShield knew from past experience had represented Nerium sales associates in similar litigation involving Nerium, and who had previously stated to counsel for LegalShield that he should get notice of such intended actions. On the morning of August 14, Mr. Smith advised that he had been retained by Todd Cahill to represent him and would accept service for him. Thereafter, LegalShield e-mailed copies of the Petition and Motion for A Temporary Restraining Order and Temporary Injunction, and Brief in Support to Mr. Smith, as well as serving copies by Federal Express.

3.  LegalShield is a pioneer and national leader in the sale and marketing of legal service contracts (referred to as "Memberships") in the United States and Canada, through which members have access to the legal services specified in the membership contract via provider attorneys in each state or geographic region. LegalShield's Memberships are sold through a network marketing system by independent sales associates.

4.  LegalShield pioneered its products and marketing system beginning in 1972, and has since invested 40 years and substantial human and financial resources in the development of information and processes for the sale of Memberships through associates, and the facilitation of legal services to members. LegalShield's information and processes have independent economic value, both actual and potential, because they are not generally known or readily ascertainable to the public or competitors. LegalShield undertakes reasonable efforts to maintain the secrecy of this information and considers its processes, information and sales force to be trade secrets.

2

5.    One of LegalShield's several trade secrets is the names and identities of its sales associates and those downline of the associate in the network marketing system – i.e. sales associates who are recruited to LegalShield by an existing sales associate from whose Membership sales the existing associate also earns commissions. Those associate organizations are the framework through which LegalShield Memberships are sold and through which associates are trained and supported in their sales efforts. Thus, the names, identities and relationships of these associates constitute a valuable trade secret of LegalShield.

6.    The names and identities of LegalShield's sales associates are known only to LegalShield employees who need access to that information to manage the associate force and promote the product, and to other sales associates who work with those associates, all solely for the purposes of LegalShield's business. LegalShield seeks to maintain the confidentiality of the associate identities, including without limitation, a provision in the Associate Agreement that associate names are confidential and proprietary information of LegalShield, and are not to be used by any associate either while at LegalShield or after departure for any purpose other than promoting LegalShield.

7.    Defendant was an independent sales associate of LegalShield who entered into an Associate Agreement with LegalShield in 2004. Under his Associate Agreement, Defendant was authorized to sell and market LegalShield Memberships and recruit and train other associates to market and sell Memberships.

8.    In the Associate and/or other Agreements Defendant entered into with LegalShield, he specifically agreed that the identity of the associates downline to him is confidential. proprietary information belonging to LegalShield, agreed that associate information was a trade secret, and agreed that he would not use such information for any purpose other than

3

promoting LegalShield during or after his relationship with LegalShield. Defendant also agreed that he would not proselytize, recruit or solicit in any manner any LegalShield Associate into any other company or organization during the term of the Associate Agreement and for 2 years after the date of any termination of the Agreement.

9.      As of April 19, 2008, Defendant had risen through LegalShield's marketing structure to the point that he gained the status of Regional Manager in the San Diego, California region, and entered into a Regional Manager Agreement with LegalShield, a position he held until his resignation on August 10, 2012. Under the Regional Manager Agreement, Defendant received compensation in addition to that received under his Associate Agreement, and gained access to, and relationships and contacts with, other Associates, as well as information about the success of those Associates. In the Regional Manager Agreement, Defendant again specifically acknowledged his access to trade secret and confidential information of LegalShield including connection with, and the identity and success of, its sales associates, among other things, and agreed to maintain that information as confidential. He also agreed not to solicit in any manner, any LegalShield associate into any other company or organization during the terms of the agreement or for 2 years thereafter.

10.      In December 2011, Defendant also became Regional Vice-President of Illinois, and was subject to the terms of the LegalShield Regional Vice-President Agreements. In this position, though still an independent contractor, Defendant received additional compensation and duties and gained additional and important access to associate information across an even broader range of associates. As Regional Vice-President, Defendant confirmed and agreed that the identity and success of LegalShield's sales associates was a trade secret and confidential

information of LegalShield and that he would not solicit any sales associates to another company for a period of 2 years after termination thereof.

11.    Defendant, through positions of trust and confidence with LegalShield, became a market leader for LegalShield's business in California and Illinois.

12.    During this entire time Defendant has marketed and sold LegalShield Memberships and recruited and trained other sales associates to market and sell LegalShield Memberships, both as an independent associate under his Associate Agreement, and in additional positions of trust and confidence under the Regional Manager and Regional Vice-President Agreements.  Under his Associate Agreement, Defendant received payment of commissions, including advance commissions, for his Membership sales as well as for the Membership sales of associates downline to him pursuant to the marketing plan incorporated into the Associate Agreement and certain amendments to the marketing plan.  Defendant has received additional payments pursuant to the Regional Manager and Regional Vice-President Agreements.

13.    As attested to in the affidavits of Michael Cabradilla and Kelly Feest attached hereto as Exs. 2 and 3, contrary to his specific Agreements with LegalShield, beginning on August 9, 2012, Defendant started soliciting LegalShield associates to Nerium International.

14.    Michael Cabradilla is an Executive Director and a six figure ring earner with LegalShield, and is a Regional Manager of LegalShield for North County, San Diego. Mr. Cabradilla was in Defendant's downline and is part of a group of LegalShield associates organized by Defendant, referred to as the Executive Leadership Program ("ELP"), the purpose of which is success training for their LegalShield business. David Byrd is a success coach who worked with the ELP. (Affidavit of Michael Cabradilla, ¶ 4, Ex. 2 hereto).

5

15.     Shortly after midnight on August 10, 2012, Defendant texted Cabradilla and asked if he could talk to with him. Cabradilla did not respond until the morning of the 10th and thereafter at 7:30 a.m. received a text from Defendant that he was "calling for a mastermind with leaders at 1pm today in mission valley area." (Affidavit of Michael Cabradilla, ¶¶ 5-6, and Ex. A thereto, attached hereto as Ex. 2). "Mastermind" is a term used among the LegalShield team to refer to getting together in a group setting to roundtable and make plans about their LegalShield business. (*Id.* at ¶ 7). Defendant advised Cabradilla that "ELP leaders only" were invited. (*Id.* at ¶ 8 and Ex. A thereto).

16.     At 8:42 a.m. Defendant sent a text to the ELP group that he was "excited about today. Meet at 1pm at the Hilton." At 9:27 he sent another ELP group text "Being [Bring] your planner to as we will be mapping some things out." (Cabradilla Affidavit, ¶¶ 10-11 and Ex. A thereto, attached hereto as Ex. 2).

17.     Separate from the texts and calls which appeared to be going to the entire ELP group, Defendant texted Cabradilla that "I need to meet with you at 12:45pm as a ring earner to go over some insights before crew comes at 1pm if possible." Cabradilla agreed. (Cabradilla Affidavit, ¶ 9 and Ex. A thereto, attached hereto as Ex. 2). Between 11:30 a.m. and 12:30 p.m., Defendant repeatedly texted Cabradilla (and called him) inquiring as to when he would arrive and indicating he needed to talk to him personally. (*Id.* at ¶ 12 and Ex. A thereto). When he did arrive, Defendant took him to an area separate from where the meeting was to occur. Rather than conduct the business of LegalShield for which the meeting was purportedly called, Defendant told Cabradilla he was leaving LegalShield for Nerium and solicited him to come to Nerium as well. Defendant said to Cabradilla:

*       Nerium really wanted Cabradilla to join them too;

6

- Nerium would offer him a deal which included a $10,000/month guarantee;

- Nerium wanted him badly and they were not giving the same deal to others;

- He would be placed front-line to Defendant;

- Nerium would arrange to place others under Cabradilla in his organization, including other "big names" from LegalShield as well as other companies.

(Cabradilla Affidavit, ¶¶ 13-14, Ex. 2 hereto).

18.     In that meeting, Defendant repeatedly made negative statements about

LegalShield and positive statements about Nerium, such as:

- He was leaving LegalShield because of its compensation plan and that Nerium has everything he ever wanted. He made claims about how much money former LegalShield associates were making at Nerium;

- Harland Stonecipher (founder and former CEO of LegalShield) was forced out of LegalShield and that Defendant was going to talk to Harland Stonecipher and then he would feel even better about his decision;

- LegalShield was going to "turn into an insurance company" and that a company should not compete with its associates;

- David Byrd, the success trainer who had been working with the ELP group, had been around and had advised many people at LegalShield. Defendant said that it was David Byrd's opinion that Defendant was making the best decision in leaving LegalShield for Nerium based on his specific "Vision Statement."

- Current LegalShield associates in Defendant's organization were going with him, and suggested other top leaders might be leaving as well.

(Cabradilla Affidavit, ¶ 15 Ex. 2 hereto).

19.     After having already made all of these statements to Cabradilla, Defendant then

told Cabradilla that he needed him to send an e-mail right then asking about Nerium. (*Id.* at ¶

17).

20.     After this individual meeting, Defendant asked Cabradilla if he would be in the

room of the 1:00 meeting of executive directors since he was a ring earner. Cabradilla went to

the meeting because he wanted to hear what Defendant was going to say to the rest of the group

and, as a Regional Manager for part of San Diego, he needed to know what was going on in the marketplace. (Cabradilla Affidavit, ¶ ¶ 18-19, Ex. 2 hereto).

21.    When Defendant commenced the group meeting, he told the group he did not believe in LegalShield anymore and he was leaving. He stated that he was going to post his decision about leaving to go to Nerium on Facebook in 30 minutes or an hour. (Cabradilla Affidavit, ¶¶ 21-22, Ex. 2 hereto). He told people that if they wanted to know more about his new business they should e-mail him. Cabradilla and most other associates in the room left immediately, though some stayed and are believed to have sent Defendant an e-mail while in the room to find out what his plans were, after which he proceeded to tell them about Nerium. (*Id.* at ¶¶ 23-26).

22.    Thus, the meeting called as a LegalShield mastermind meeting for which the associates were asked to bring planners included no LegalShield business at all and was instead a façade for Defendant to announce his departure and induce others to join him.

23.    Defendant texted Cabradilla several more times on August 10 with notes about his departure to which Cabradilla did not respond. Defendant continued to text Cabradilla on August 11 and 12 urging him to call. On August 11, 2012 Defendant wrote: "Mike-can we talk today? Time is of the essence. I know you want to do the RIGHT thing. Just remember its Me that left and you know me! I would never do something selfish. Please call Me today as well as David Byrd to know the truth." (Cabradilla Affidavit, ¶¶ 28-29 and Ex. B thereto, attached hereto as Ex. 2).

24.    The pretext of a meeting which was in fact a solicitation is also established by the Affidavit of another executive director that was in Defendant's organization, Kelly Feest. Feest was also a member of the ELP and Defendant was her upline. (Affidavit of Kelly Feest, ¶¶ 2-3,

8

Ex. 3 hereto). On August 9, Defendant called Feest asking her to come to a "mastermind" meeting at the Hilton on August 10. He thereafter texted every executive director on his team about the "mastermind meeting." (Feest Affidavit, ¶ 4, Ex. 3 hereto).

25.     There were 10 to 12 other LegalShield directors at the meeting on August 10. (Feest Affidavit, ¶ 5, Ex. 3 hereto). Contrary to his texts and calls, Defendant did not conduct any LegalShield business at the meeting. Instead, he told the group that he was leaving LegalShield to pursue another opportunity because he did not see LegalShield as a place where he or his team could make any money. (*Id.* at ¶¶ 6, 7). He then stated that if anyone in the room wanted to know his plan, they needed to send him an e-mail. (*Id.* at ¶ 8). Though Feest and others (including Cabradilla) left the room, a few of the attendees e-mailed Defendant immediately and then stayed in the room approximately 30 more minutes with Defendant. (*Id.* at ¶ 9).

26.     Defendant did in fact post his Nerium plans on Facebook. The posting included an announcement about Nerium on two Facebook accounts which had been created by Defendant and/or others for LegalShield associates in the San Diego market. The receipt of this Nerium solicitation by existing LegalShield associates is confirmed by comments of such associates posted in response to Defendant's Nerium post. *See* Facebook Postings, Ex. 4 hereto.

## ARGUMENTS AND AUTHORITIES

I.      **A Temporary Restraining Order and Preliminary Injunction are Necessary to Protect LegalShield from Defendant's Use of LegalShield's Trade Secrets**

LegalShield requests that the Court, through temporary restraining order followed by a temporary injunction, maintain the status quo while this litigation is pending. Thus, LegalShield requests that Defendant, his agents, representatives or anyone else acting on his behalf or at his behest, either direct or indirectly, be restrained and enjoined from contacting any person or organization known by Defendant to be a LegalShield sales associate, and either directly or

indirectly soliciting or encouraging the associate to join another company or leave LegalShield for the eventual purpose of joining another company, and be otherwise restrained and enjoined from using any LegalShield trade secret information for any purpose.

A temporary restraining order is designed to protect the status quo, to prevent irreparable injury until such time as the Court may determine a plaintiff's motion for temporary injunction. *See Morse v. Earnest, Inc.*, 1976 OK 31, 547 P.2d 955. The standards to be applied to temporary restraining orders are almost identical to the standards applied to temporary injunctions. *See Smith v. Soil Conservation Serv.*, 563 F. Supp. 843, 844 (W.D. Okla. 1982); 43 C.J.S. *Injunctions* §17 at 782-784. To obtain a temporary restraining order and temporary injunction, LegalShield must, and herein does, show: (1) it will likely prevail on the merits; (2) it will suffer irreparable harm unless the restraining order is issued; (3) the threatened injury to LegalShield outweighs the damages the restraining order may cause Defendant (4) the order, if issued, would not be adverse to the public interest. *See Roye Realty and Development, Inc. v. Watson*, 1990 OK CIV APP 21, 791 P.2d 821, 823; 43 C.J.S. Injunction § 17. The only additional element required for a temporary restraining order is that specific facts, shown by affidavit or verified petition, indicate that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or the attorney for the adverse party can be heard in opposition. *See* Okla. Stat. tit. 12 §1384.1(B)(1).

## A.    LegalShield is Likely to Succeed on the Merits of Its Claims.

To obtain a temporary injunction, the movant need not prove positively that it will prevail on the merits of its claims. In *Atchison, T. and S. F. Ry. Co. v. Lennen*, the court explained:

> It is not necessary that plaintiffs show positively that they will prevail on the merits before a preliminary injunction may be granted. As this court stated in *Valdez v. Applegate*, 616 F.2d 570, 572 (10th Cir. 1980), "(t)he determination of a motion for a preliminary injunction and a decision on the merits are different." It is only necessary that plaintiffs establish a reasonable probability of success, and

> not an "overwhelming" likelihood of success, in order for a preliminary injunction
> to issue. *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir. 1980).

640 F.2d 255, 261 (10th Cir. 1981).

Here, there is a substantial likelihood that LegalShield will prevail on the merits. LegalShield's business model is built on a system of network marketing which is dependent upon the continued existence of the associate sales force. Associates not only sell memberships, but recruit others to become associates and sell memberships. The recruiting associate earns a commission override on the sales of the recruited associates. Much of the training and networking for LegalShield is performed through these associate organizations in which associates often work closely together. Defendant agreed when he entered into his Associate Agreement with LegalShield that the names of associates downline to him was confidential and would not be used for any purpose other than promotion of LegalShield.

As described above and in the verified Petition, there is overwhelming evidence that Defendant is using his knowledge of associate names and other associate information to solicit associates to his new network marketing company, Nerium. Defendant not only deceptively called a meeting of the top leaders in his LegalShield organization on the pretext of LegalShield business, and then instead told them he was leaving LegalShield and solicited them to inquire further, but he blatantly and unmistakably solicited one of the top earners in his organization to go to Nerium, and offered him a special deal. While discovery is necessary to determine the full scope of Defendant's misuse of LegalShield's trade secrets to solicit its sales associates, and the full scope of his wrongful solicitation of LegalShield's sales associates, the evidence currently in LegalShield's possession as evidenced by the affidavits and Facebook posts attached hereto as Exs. 2-4, alone compel the conclusion that Defendant has breached his agreements not to use LegalShield's trade secret information or to solicit its Associates to another company, is

11

continuing to do so at present, and will continue to misappropriate LegalShield's trade secrets and breach his agreements. Thus, there is substantial likelihood that LegalShield will succeed on the merits.

**B.  LegalShield will Suffer Irreparable Harm Without an Injunction.**

As described in paragraph A above, the associates are the backbone of LegalShield's membership sales and marketing. Defendant's use of the names and other learned information while at LegalShield to recruit or solicit those associates to another company will cause substantial injury to LegalShield. If the status quo is not maintained, each associate unfairly solicited from LegalShield by Defendant may solicit another associate who will solicit another until LegalShield's sales force is diluted to a point from which recovery will be difficult if not impossible. With the loss of its sales force, LegalShield will potentially lose hundreds of thousands of Membership sales. Thus, the potential harm from the loss of its sales force is irreparable and cannot be adequately compensated in money.

**C.  Defendant will not be Harmed by an Injunction.**

Defendant will not suffer injury from the entry of the restraining order and injunction because he can recruit associates for his new company from the universe of other individuals or organizations who are not LegalShield associates. Further, Defendant cannot properly claim injury from undertaking conduct he is contractually and legally prohibited from pursuing in any event.

**D.  The Public Interest is Served by the Issuance of an Injunction.**

The public interest is in favor of protecting the contractual relationships between parties, the protection of the economic value of a company built over 40 years from being raided by departing associates, and the integrity of the business relations between the parties. Certainly the public interest is not offended by restraining parties from soliciting LegalShield associates when

Defendant has a world of other persons available to him – Defendant's ability to fairly earn a living is not restrained.

### CERTIFICATE OF COUNSEL AS TO COMPLIANCE WITH 12 O.S. § 1384.1

The undersigned counsel hereby certifies to the Court, pursuant to 12 O.S. §1384.1, that she, on behalf of LegalShield, gave Defendant the notice described in paragraph 2.

### CONCLUSION

For the above stated reasons, Plaintiff LegalShield respectfully requests that Defendant, Todd Cahill, his agents, servants, representatives, and all other persons acting by and under his authority or in concert with him, be restrained from contacting any person or organization he knows, or suspects, are LegalShield Associates to directly or indirectly solicit or encourage the Associate to join Defendant in a new company or organization or to leave LegalShield for the eventual purpose of joining another company, and be restrained from otherwise using trade secret information of LegalShield for any purpose.

Respectfully submitted,

Brooke S. Murphy, OBA #6524
Timila S. Rother, OBA #14310
**CROWE & DUNLEVY**
A Professional Corporation
20 North Broadway, Suite 1800
Oklahoma City, OK 73102-8273
(405) 235-7735
(405) 272-5278 (Facsimile)
brooke.murphy@crowedunlevy.com
timila.rother@crowedunlevy.com

**ATTORNEYS FOR PLAINTIFF PRE-PAID LEGAL SERVICES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of August, 2012, a true and correct copy of the foregoing was served *via* email and Federal Express overnight delivery on the following Defendant at the addresses noted below:

> Gary E. Smith
> **Graham, Bright & Smith, PC**
> Two Lincoln Centre
> 5420 LBJ Freeway, Ste. 300
> Dallas, TX 75240
>
> Email: gespc1@yahoo.com

and *via* inclusion in the Summons issued herein on August 14, 2012 which is also being served on Gary Smith at the above address as a result of his agreement to accept service for Defendant.

Timila S. Rother

2351849.01

**Timila S. Rother**

| | |
|---|---|
| **From:** | Timila S. Rother |
| **Sent:** | Monday, August 13, 2012 7:05 PM |
| **To:** | 'tcprepaidlegal@yahoo.com' |
| **Subject:** | Notice of Suit by LegalShield and Presentation of Motion for Temporary Restraining Order at 3:00 p.m. on August 14, 2012 |

Mr. Cahill,

We represent LegalShield in an action that we intend to commence against you tomorrow in state court in Oklahoma. I just attempted to leave you a voice mail on your cell phone, the only number we could locate, and did not reach you. Your voice mail box said it was full.

LegalShield plans to file a lawsuit against you tomorrow in the District Court of Pontotoc County, Oklahoma, 120 West 13th Street, Ada, Oklahoma for breach of contract and misappropriation of its trade secrets. LegalShield plans to present a motion for a temporary restraining order against you and a motion to expedite discovery in the case, to The Honorable Thomas Landrith at 3:00 p.m. (or as soon thereafter as we can be heard by the Judge) on August 14, 2012.

You and/or any attorney you may engage may be present in person to present your position on these motions and any objections thereto. Also, in light of the time frame, if you and/or any attorney you may engage wishes to participate by conference call, please provide me with the name of the person(s) to be participating and the number to call and I will make arrangements for such participation by phone.

I plan to be leaving this office (phone number noted below) for Ada around 1 p.m. tomorrow, so please notify me prior to that time by either phone or e-mail. Thank you.

Timila S. Rother
Crowe & Dunlevy
20 N. Broadway, Suite 1800
Oklahoma City, OK 73102
405-235-7757 (phone)
405-272-5226 (fax)
rothert@crowedunlevy.com

This e-mail message may be protected by the attorney-client privilege and/or other privileges or protections. If you believe that it has been sent to you in error, do not read it . Please reply to the sender that you have received the message in error. Then delete it. Thank you.

## AFFIDAVIT OF MICHAEL CABRADILLA

STATE OF CALIFORNIA    )
                              ) ss
COUNTY OF San Diego )

Being over the age of 18 and from his personal knowledge, being first duly sworn, Affiant states as follows:

1.     My name is Michael Cabradilla and I am an associate with Pre-Paid Legal Services, Inc. now known as LegalShield (hereafter "LegalShield").

2.     I am an Executive Director and a six figure ring earner with LegalShield. I am also the Regional Manager of North County, San Diego.

3.     Todd Cahill was my upline associate and was also a LegalShield Regional Vice-President with whom I had worked for seven years in LegalShield.

4.     I am part of a group of LegalShield associates organized by Todd Cahill which was referred to as the Executive Leadership Program ("ELP"), the purpose of which was training to be successful in our LegalShield business - to sell memberships and recruit other associates. David Byrd is a success coach who worked with our ELP.

5.     Shortly after midnight on August 10, 2012, Todd Cahill texted me and asked if he could talk to me for a second. Text Messages, Ex. A hereto.

2

6.    I did not respond to Mr. Cahill until the next morning. At 7:30 a.m., he texted that he was "calling for a mastermind with leaders at 1pm today in mission valley area." Text Messages, Ex. A hereto.

7.    "Mastermind" is a term we used on our team at LegalShield to refer to getting together in a group setting to roundtable and make plans about our LegalShield business.

8.    I told Mr. Cahill I could come and asked who else was invited. He advised that "ELP leaders only" were invited. Text Messages, Ex. A hereto.

9.    He then texted me "I need to meet with you at 12:45pm as a ring earner to go over some insights before crew comes at 1pm if possible." Text Messages, Ex. A hereto. I agreed to do that and asked how long the "mastermind" would be and he advised less than an hour. Text Messages, Ex. A hereto.

10.    At 8:42 a.m. Mr. Cahill sent a text to the ELP group that he was "excited about today. Meet at 1pm at the Hilton." Text Messages, Ex. A hereto.

11.    At 9:27 he sent another ELP group text "Being [Bring] your planner to as we will be mapping some things out." Text Messages, Ex. A hereto.

12.    At around 11:30 Mr. Cahill left me a voice-mail and at 11:37 texted me that he was already there and to let him know when I was there. At 12:12 he texted me "I am here" and at 12:14 texted me "Can you meet with me as soon as possible because I need to talk to you personally." Text Messages, Ex. A hereto.

13.     When I arrived at the hotel at around 12:40 we went to an area to talk separate from where the meeting was to occur.

14.     Mr. Cahill told me he was leaving LegalShield for Nerium and said:

- Nerium really wanted me to join them too;

- Nerium would offer me a deal which included a $10,000/month guarantee;

- Nerium wanted me badly and they were not giving the same deal to others, that is why he was meeing with me separately;

- I would be placed front-line to Mr. Cahill;

- They would arrange to place others under me in my organization, including other "big names" from LegalShield as well as other companies.

15.     In this meeting with me, Mr. Cahill repeatedly made negative statements about LegalShield and positive statements about Nerium. He said:

- He was leaving LegalShield because of its compensation plan and that Nerium has everything he ever wanted. He made claims about how much money former LegalShield associates such as Toan Nguyen, Danny Gasemy and Mark Smith were making at Nerium;

- I would get to work with people like Jeff Olson and Mark Smith and that Jeff Olson knew what he was doing and that he would not let Nerium go under;

- Mark Smith was around, but he was vague about where;

- He and his wife Natasha had spent hours with Mark Smith on Thursday (the day before) talking about Nerium;

- Harland Stonecipher (founder and former CEO of LegalShield) was forced out of LegalShield and that he was going to talk to Harland Stonecipher and then he would feel even better about his decision;

3

- LegalShield was going to "turn into an insurance company" and that a company should not compete with its associates;

- David Byrd, the success trainer who had been working with our ELP group, had been around and had advised many people at LegalShield. Mr. Cahill said that it was David Byrd's opinion that Mr. Cahill was making the best decision in leaving LegalShield for Nerium based on his specific "Vision Statement."

- He did not trust the CEO of LegalShield, Rip Mason. He said he had a conversation with Rip Mason about leaving and that Rip Mason offered him an amount.

- Current LegalShield associates in his organization, Scott and Kacy Christiansen, were going with him.

- He had talked to other LegalShield top leaders but he did not know if they would leave.

16.    After making all of these statements, he continued to tell me that Nerium wanted me to join them.

17.    After telling me all of these things and having a conversation about going to Nerium, he told me I needed to send him an e-mail right then asking about Nerium.

18.    At around 1:00 or a few minutes after he said we had to go to the meeting he had called with the other Executive Directors. He asked me if I would just be in the room since I was a ring earner.

19.    I went to the meeting because I wanted to hear what he said to the rest of the group and, as a Regional Manager of San Diego, I needed to know what was going on in the market place.

20. The meeting did not start right away because Mr. Cahill was waiting on others to arrive. At one point when he was out of the room for a moment I stood up in front of the group to quickly warn them to beware and to keep up their guard.

21. When he started the meeting, he told the group he did not believe in LegalShield anymore and he was leaving. He said he could not stand on stage and tell others they could make money in something he did not believe in.

22. He said he was going to post his decision about leaving to go to Nerium on Facebook in 30 minutes or an hour.

23. He told people that if they wanted to know more about his new business they should e-mail him.

24. Several of the associates in the audience were angry asking why he had called a meeting about LegalShield business and asked them to bring planners.

25. I and many other associates in the room left immediately.

26. A few stayed and I believe those that stayed sent him an e-mail while sitting in the room.

27. Later in the evening I texted Mr. Cahill about certain regularly scheduled events and whether notice had been given about the change in responsibility for the events. Text Messages, Ex. B hereto.

28.     He then texted me several more times on August 10 with several notes about his leaving and I did not respond. Text Messages, Ex. B hereto.

29.     The next day, on August 11, 2012 at 7:06 a.m., Mr. Cahill texted me "Mike-can we talk today? Time is of the essence. I know you want to do the RIGHT thing. Just remember its Me that left and you know me! I would never do something selfish. Please call Me today as well as David Byrd to know the truth."

30.     He texted me again on August 11, at 10:28 p.m. asking if I could talk for a minute. Text Messages, Ex. B hereto. I did not respond to those texts.

31.     On August 12 he texted me that we needed to talk about the Hilton (where we had room arrangements for LegalShield meetings). He sent several additional texts asking to talk by phone but I indicated that I would prefer to communicate by text. Text Messages, Ex. B hereto.

Further Affiant saith not.

_____
Michael Cabradilla


Subscribed and sworn to before me this __13__ day of August, 2012.

_____
Notary Public

My Commission Expires:

_____          *See attached Document*

(SEAL)

6

# CALIFORNIA JURAT WITH AFFIANT STATEMENT

GOVERNMENT CODE § 8202

☑ See Attached Document (Notary to cross out lines 1–6 below)
☐ See Statement Below (Lines 1–6 to be completed only by document signer[s], *not* Notary)

_____
Signature of Document Signer No. 1

_____
Signature of Document Signer No. 2 (if any)

State of California

County of _San Diego_

**NANCY I. MIRELES**
Commission # 1877218
Notary Public - California
San Diego County
My Comm. Expires Jan 16, 2014

Place Notary Seal Above

Subscribed and sworn to (or affirmed) before me

on this **13** day of **August**, 20 **12**,
　　　　　　Date　　　　　　　Month　　　　　　Year

by

(1) _Michael Tangonan Cabradilla_,
　　　　　　　　Name of Signer

proved to me on the basis of satisfactory evidence
to be the person who appeared before me (.) (,)

(and

(2)_____,
　　　　　Name of Signer

proved to me on the basis of satisfactory evidence
to be the person who appeared before me.)

Signature _CNauy, Leen_
　　　　　　　Signature of Notary Public

_____ **OPTIONAL** _____

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

| RIGHT THUMBPRINT OF SIGNER #1 |
| --- |
| Top of thumb here |

| RIGHT THUMBPRINT OF SIGNER #2 |
| --- |
| Top of thumb here |

**Further Description of Any Attached Document**

Title or Type of Document: _Affidavit Of Michael Cabradilla_

Document Date: _8│13│2012_　　　　Number of Pages: _6_

Signer(s) Other Than Named Above: _____

© 2010 National Notary Association • NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)　　　　Item #5910

**ED PPL Todd Cahill**

ED PPL Todd Cahill: Hey man you on your way home?

11:44PM, Aug 9

ED PPL Todd Cahill: I know it late but can you talk for a sec?

12:15AM, Aug 10

Me: Whats up? Im up now.

7:27AM, Aug 10

ED PPL Todd Cahill: I am in town and I am calling for a mastermind with leaders at 1pm today in mission valley area

7:30AM, Aug 10

Tap to enter message

EXHIBIT A

ED PPL Todd Cahill: I am in town and I am calling for a mastermind with leaders at 1pm today in mission valley area

7:30AM, Aug 10

Me: Ok. Who's invited? Where?

7:31AM, Aug 10

ED PPL Todd Cahill: ELP leaders only

7:32AM, Aug 10

ED PPL Todd Cahill: I am working on location and will know after 9am

7:32AM, Aug 10

Tap to enter message 

Me: Ok. Who's invited? Where?

7:31AM, Aug 10

ED PPL Todd Cahill: ELP leaders only

7:32AM, Aug 10

ED PPL Todd Cahill: I am working on location and will know after 9am

7:32AM, Aug 10

Me: K. So, Akin on our team. Ok, let me know. Anything you need me to do right now?

7:33AM, Aug 10

ED PPL Todd Cahill: And Derron, Pete and Vicki

7:34AM, Aug 10

ED PPL Todd Cahill: Akin has his birthday today and is traveling

7:34AM, Aug 10

Me: K. Derron has work, Vicki I think too.

7:35AM, Aug 10

ED PPL Todd Cahill: I need to meet with you at 12:45pm as a ring earner to go over some insights before crew comes at 1pm if possible




Derron, Pete and Vicki

7:34AM, Aug 10

ED PPL Todd Cahill: Akin has his birthday today and is traveling

7:34AM, Aug 10

Me: K. Derron has work, Vicki I think too.

7:35AM, Aug 10

ED PPL Todd Cahill: I need to meet with you at 12:45pm as a ring earner to go over some insights before crew comes at 1pm if possible

7:36AM, Aug 10

 

Me: Ok. I can do that. How long will the mastermind be? (I have a lot of prep work that I had planned today for our baby shower tomorrow.)

7:38AM, Aug 10

ED PPL Todd Cahill: An hour or less I promise. I also have gift for Jenny to give and I am sure Natasha can come tomorrow.

7:40AM, Aug 10

Me: Thank u sir.

7:44AM, Aug 10



enter message


**ED PPL Todd Cahill**



Me: Ck this out, LOL
7:44AM, Aug 10

ED PPL Todd Cahill: I bought my first home using that when I was 20
7:48AM, Aug 10

Me: Wow. My dad got it at an estate sale.
7:48AM, Aug 10

enter message

ED PPL Todd Cahill: I am excited about today. Meet at 1pm at the Hilton

8:42AM, Aug 10

ED PPL Todd Cahill: We are meeting here so it's quiet. I rented a small little room

8:47AM, Aug 10

ED PPL Todd Cahill: Being your planner to as we will be mapping some things out

9:27AM, Aug 10

ED PPL Todd Cahill: Bring

9:28AM, Aug 10




ED PPL Todd Cahill: Left you a vm. Let me know. I am down here already
11:37AM, Aug 10

Me: I'll try to be there asap. Im still running around. Have a lot today.
12:11PM, Aug 10

ED PPL Todd Cahill: I am here
12:12PM, Aug 10

ED PPL Todd Cahill: Can you meet with me as soon as possible because I need to talk to you personally
12:14PM, Aug 10

Tap to enter message 

**ED PPL Todd Cahill**

ED PPL Todd Cahill: We will be in the "Newport 1" room on first floor

12:22PM, Aug 10

ED PPL Todd Cahill: Is that ok?

12:24PM, Aug 10

ED PPL Todd Cahill: I am here now

12:24PM, Aug 10

Me: Phone dying. On way
12:33PM, Aug 10

ED PPL Todd Cahill: What is your ETA?

1:13PM, Aug 10

enter message



**ED PPL Todd Cahill**

Me: Have u contacted Judy Pratt about Tues & Thursday?

5:33PM, Aug 10

ED PPL Todd Cahill: Not yet
5:36PM, Aug 10

Me: I'm gonna send her an email. (Just to take over responsibility for it, for now).

5:38PM, Aug 10

ED PPL Todd Cahill: Ok thanks man. I appreciate you. Please don't tell people Scott and kacy are leaving

enter message

EXHIBIT B

you. Please don't tell people Scott and kacy are leaving

5:41PM, Aug 10

ED PPL Todd Cahill: I pray to God Sean and Loren don't de-edify me

7:38PM, Aug 10

ED PPL Todd Cahill: If that happens that shows their true colors

7:39PM, Aug 10

ED PPL Todd Cahill: I made them a fortune

7:39PM, Aug 10



happens that shows their true colors

7:39PM, Aug 10

ED PPL Todd Cahill: I made them a fortune

7:39PM, Aug 10

ED PPL Todd Cahill: Mike-can we talk today? Time is of the essence. I know you want to do the RIGHT thing. Just remember its Me that left and you know me! I would never do something selfish. Please call Me today as well as David Byrd to know the truth.

7:06AM, Aug 11



ED PPL Todd Cahill: I made them a fortune

7:39PM, Aug 10

ED PPL Todd Cahill: Mike- can we talk today? Time is of the essence. I know you want to do the RIGHT thing. Just remember its Me that left and you know me! I would never do something selfish. Please call Me today as well as David Byrd to know the truth.

7:06AM, Aug 11

ED PPL Todd Cahill: Mike can you talk for a min?

10:28PM, Aug 11




**ED PPL Todd Cahill**

can we talk today? Time is of the essence. I know you want to do the RIGHT thing. Just remember its Me that left and you know me! I would never do something selfish. Please call
Me today as well as David Byrd to know the truth.

7:06AM, Aug 11

ED PPL Todd Cahill: Mike can you talk for a min?

10:28PM, Aug 11

ED PPL Todd Cahill: Hey Mike, we do need to talk about the Hilton

9:45PM, Aug 12



**ED PPL Todd Cahill**

ED PPL Todd Cahill: Hey Mike, we do need to talk about the Hilton

9:45PM, Aug 12

Me: I sent a message to Judy Pratt and left a vmail today. Are you planning on doing Nerium events on Tuesdays/Thursdays at the Hilton?

9:53PM, Aug 12

ED PPL Todd Cahill: No that's why I want to talk

9:54PM, Aug 12

Me: Ok. We can talk thru text message. Phone abt to

 



**ED PPL Todd Cahill**

Me: Ok. We can talk thru text message. Phone abt to die.

9:54PM, Aug 12

ED PPL Todd Cahill: I am driving

10:22PM, Aug 12

ED PPL Todd Cahill: So can you call? I have questions about stuff with hotel

10:22PM, Aug 12

Me: Just text when you can, with questions. Thank you. I wont be able to respond til tomorrow. Turning phone off.

 


**ED PPL Todd Cahill**

ED PPL Todd Cahill: Wow
10:24PM, Aug 12

Me: Jenny time
10:31PM, Aug 12

ED PPL Todd Cahill: I need to know some things about hilton and I can ask tomorrow. Many people on your team are hitting me up. Havent responded to most except one. I am in a weird place with that
10:33PM, Aug 12

Me: I've been respectful and loyal for over 7 years, as a business associate

enter message

Me: I've been respectful and loyal for over 7 years, as a business associate and a brother in Christ. Thank you for respecting me and our family. Drive safely.

10:45PM, Aug 12

ED PPL Todd Cahill: I know that's why I ain't responding

11:00PM, Aug 12

ED PPL Todd Cahill: You have been the most incredible man I ever met and I love you. I really mean that with all my heart





**ED PPL Todd Cahill**

ED PPL Todd Cahill: I know that's why I ain't responding

11:00PM, Aug 12

ED PPL Todd Cahill: You have been the most incredible man I ever met and I love you. I really mean that with all my heart

11:01PM, Aug 12

ED PPL Todd Cahill: I also respect you so much . I just want to tell you something I can't text. It can wait but it's to long to text. Good night

11:04PM, Aug 12



<center>AFFIDAVIT OF KELLY FEEST</center>

STATE OF CALIFORNIA      )

COUNTY OF SandDiego )

Upon oath duly sworn, Affiant deposes and states as follows:

1. Your Affiant is Kelly Feest of California.
2. I have been a sales associate for Pre-Paid Legal Services, Inc. now known as LegalShield for several years. I currently serve as an Executive Director for LegalShield.
3. My upline at LegalShield is Todd Cahill. I know Mr. Cahill as the Regional Vice President of Southern California (San Diego) for LegalShield. I also know Mr. Cahill as a leader from LegalShield who regularly speaks at trainings and events.
4. On August 9, 2012 Todd Cahill called me and asked me to come to a LegalShield team "Mastermind" meeting at the Hilton in San Diego, California. He told me the meeting would be on August 10, 2012 at 1:00 p.m. He called or sent a text message to every Executive Director on his team about this Mastermind Meeting.
5. On August 10, 2012, I arrived at the Hilton Hotel as instructed for the LegalShield team Mastermind with my upline Todd Cahill. There were 10 to 12 other LegalShield Executive Directors at the meeting.
6. At the meeting, Mr. Cahill did not conduct any LegalShield business. At the beginning of the meeting, Mr. Cahill stated he made a decision to leave LegalShield and pursue another opportunity.
7. Mr. Cahill stated he did not see LegalShield as an opportunity where we, as his team, could make money and that he couldn't lead others somewhere he did not believe in.
8. He stated that if anyone in the room wanted to know his plan and where he was going, that we could email him.
9. About half of the people in the room immediately sent Mr. Cahill an email. He then stayed for approximately 30 more minutes to discuss his decision, his new business and his reasons for leaving LegalShield.

<center>1</center>

<center>3</center>

Further Affiant saith not.

Kelly Feest 

Kelly Feest

STATE OF CALIFORNIA )
                     )
COUNTY OF San Diego )

    Subscribed and sworn to before me this 13 day of August, 2012 by Kelly Feest, personally known to me or proved to me on the basis of satisfactory evidence to be the person who appeared before me.

SCOTT CHRISTOPHER CHILDS
COMMISSION # 1933315
Notary Public - California
SAN DIEGO COUNTY
My Comm. Expires Apr. 21, 2015

_____
(Signature)

(SEAL)



Elite Leaders | windmill hotel carlsbad - ... | Hotel in Carlsbad Californi... | Netflix | LegalShield | LegalShield | Compose Mail - Yahoo! M...

facebook.com/groups/321663625731 2920/

usain bolt 2012

**facebook** Search for people, places and things Adam Elhag Home

**Adam Elhag**

- News Feed
- Messages
- Events 8
- Team New Freedom - Drea...
- LS Team NEW FREEDOM
- New Freedom Champions
- **Elite Leaders**
- Team New Freedom Chicago
- LS San Diego Market
- LEGALSHIELD San Diego
- Team New Freedom Executi...
- LegalShield Forum
- San Diego Young Profession...
- SDs Finest Artist Guild
- LegalShield of Virginia
- The OFFICIAL LegalShield S...
- Body By Vi 8
- Create Group...
- App Center 20+
- Photos 3

**Elite Leaders** About Events Photos Files ✓ Notifications

Write Post | Add Photo / Video | Ask Question | Upload File

Write something...

**Todd Cahill**

FOR IMMEDIATE RELEASE

Addison, Texas – August 29, 2011

Nerium™ International, LLC of Addison, TX and Nerium SkinCare™, Inc., a subsidiary of Nerium Biotechnology, Inc. ®, of San Antonio, TX are pleased to announce their exclusive licensing partnership. This partnership was designed with the purpose of building a global brand through the development and distribution of breakthrough products in the anti-aging skincare market.

...

Continue Reading

Like · Comment · Follow Post

**Kelly Feest**

No need to stay on this page .. new team page especially for San Diego is up and running

Like · Comment · Follow Post

**Jack Mattson**

Let me make something perfectly CLEAR. I Jack Mattson, am not leaving LegalShield. I have considered allowing my wife to market another product (how many of you market Tupperware, Marry Kay, Herbal Life and others?) by herself. I will be supportive of her as she has been supportive of my LegalShield business for 6 years.

21 members

+ Add People to Group

**What should people post in this group?**
Add a Description

**Suggested Members** Hide

- **Sean Mikael** Add
- **Sherri Babale** Add
- **Brad Dette** Add
- **Engle Brown** Add
- **Craig Curry Allen** Add

See All Suggestions

**Hassan Johnson** and Nathan Bourne are now friends.

**Corey Christina** shared NBA Memes's photo.

**Robert Ford** commented on his own status: "Dats wassup"

**Shan Sebastian** commented on Teresa Antony's photo: "Simon. LOL"

**Jacqueline Padilla** commented on her own status: "At home then I have to work at 6"

**Ironsy Makthepharaks** likes Janey Bolina's photo.

**Aaron Teruya** just was thinking this would be a

- Aay Jay
- Andrea Walton
- Bhavandeep Singh
- Bonnie Robinson
- Cameron Arthur
- Danny Rivera
- John Swafford
- Kelly Feest
- Lawrence Richard Jose
- Mel Roberson
- Silver-Renee' Julius
- Tammy Nguyen
- Aaron Teruva

Search

4

8/13/2012

**facebook**

Search for people, places and things

Adam Elhag   Home ▾

New Freedom Champions   About   Events   Photos   Files

☐ Messages
☐ Events

**☆☆☆☆☆**

☐ Team New Freedom - Drea ...
☐ LS Team NEW FREEDOM
☐ **New Freedom Champions**
☐ Elite Leaders
☐ Team New Freedom Chicago
☐ LS San Diego Market
☐ LEGALSHIELD San Diego
☐ Team New Freedom Executi ...
☐ LegalShield Forum
☐ San Diego Young Profession ...
☐ SDs Finest Artist Guild
☐ LegalShield of Virgina
☐ The OFFICIAL LegalShield S...
☐ Body By Vi                 8
☐ Create Group...

☐☐☐

☐ App Center              20+
☐ Photos                      3

☐☐☐☐☐ ▾

**Todd Cahill**
FOR IMMEDIATE RELEASE

Addison, Texas – August 29, 2011

Nerium™ International, LLC of Addison, TX and Nerium SkinCare™, Inc.,
a subsidiary of Nerium Biotechnology, Inc. ®, of San Antonio, TX are
pleased to announce their exclusive licensing partnership. This
partnership was designed with the purpose of building a global brand
through the development and distribution of breakthrough products in the
anti-aging skincare market.

Founded in 2006, Nerium Biotechnology, Inc. was created to fund
research focused on new technology and applications of the Nerium
oleander plant, with ongoing research at the University of Texas MD
Anderson Cancer Center, the University of Texas at San Antonio, ST&T
Research, and Louisiana State University. Use of the Nerium oleander
plant has been identified in ancient texts and folklore for more than 1,500
years, but it wasn't until the last century that the scientific community
took interest in researching its properties. While researching the uses of
the Nerium oleander plant, Nerium Biotechnology, Inc. made an
accidental discovery: Nerium oleander possesses unique qualities that
produce remarkable age-defying results when applied to the skin.

This discovery, with product development through Nerium SkinCare, Inc.,
led to the creation of the NeriumADTM skincare line. "When we realized
the potential of our skincare applications, we started looking for the most
effective distribution channel available," says Dennis Knocke, Chairman
and CEO of Nerium Biotechnology, Inc., "We are committed to developing
life-changing products. Our team's dedicated research determined that
relationship marketing was the premier method to reach consumers, and
all roads in determining how best to accomplish this led us directly to Jeff
Olson."

Jeff Olson, Founder and CEO of Nerium International, is a leader and
powerhouse in the direct sales industry. Olson says of Nerium SkinCare,
Inc., "They're not just a supplier. They're our partner. Our purpose is to
build a global brand of breakthrough products in the anti-aging skincare
market."

Sponsored ⚙ᵎ        See All

**Expand Your Social Reach**
Dvsocial.com
New video shows how.
Get the very cool and
FREE biz-building tool just
for watching!

**Men's Designer Shoes**
GILT MAN has the best
designer sneaks, jeans
and shirts - all at up to
60% off.

**Become a Foster Parent!**
angelsfoster.org
Interested in transforming
the life of a child? Visit
Angels Foster today and
learn how to become an
exceptional foster parent!

**Want a killer body?**
t6compound.com
Fitness Compound will get
you in shape fast. Get
results and a FREE class.
Choose Zumba To

**Yoga Six**
New Pt. Loma Studio. Hot
Yoga, Vinyasa, Barre,
Sculpt and more. FREE 6
Class Card.

👍 Like · 1,110 people like this.

**Koors Insurance**
Professional Services,
LIFE Insurance, If you
died tonight, what would
your family do?CALL

👍 Like · 1,243 people like this.

**Corey Christina** shared NBA
Memes's photo.

**Robert Ford** commented on his
own status: "Dats weasup"

**Shan Sebastian** commented
on Teresa Antony's photo:
"Simon. LOL."

**Jacqueline Padilla** commented
on her own status: "At home
then I have to work at 5"

**Tronsy Makthepharaoh** likes
Janey Bolina's photo.

**Aaron Teruya**
Just was thinking this would be a
good thing for everyone to go
by and know
Three Days Grace - Never...

Aay Jay
Andrea Walton
Bhavandeep Singh
Bonnie Robinson
Cameron Arthur
Danny Rivera
Dominic Cruz
John Swafford
Kelly Feest
Lawrence Richard Jose
Mel Roberson
Silver-Renee' Julius

Aaron Teruva

🔍 Search

"As a former Director of the Templeton Growth Fund, I have researched companies and investments at the highest levels," says Nerium Biotechnology, Inc. Board Member Peter Nettelfield. "What I see with the Nerium partnership is truly unique and has the potential to not only change lives, but change the skincare market."

In 2009, Nerium SkinCare, Inc. was developed as a division of Nerium Biotechnology, Inc. to provide for research, new product development, formulation, testing, and manufacturing of all skincare applications, including the patent-pending Nerium oleander extract, NAE-8™. In 2011, Nerium International partnered with Nerium SkinCare, Inc. to build a global, first-of-its-kind skincare line based on a strong, scientific foundation.

Says Knocke, "When the medical director of a multibillion-dollar pharmaceutical company learned of our research of Nerium oleander, he said, 'The dermal applications of Nerium oleander alone have the potential to be worth our entire product pipeline.'"

Third-party clinical trials show that Nerium International's first product to market, NeriumAD Age-Defying Treatment, dramatically reduces the appearance of fine lines and wrinkles, hyperpigmentation, uneven skin texture, enlarged pores, and aging or sun-damaged skin. The night cream is intended for daily use and has proven to be safe for all skin types.

Don Smothers, Chief Executive Officer of Natural Technology, Inc., states "Although I have formulated thousands of products in my 40+ years in the skincare manufacturing industry, I have never seen a product that delivers results as quickly and effectively as NeriumAD."

Headquartered in Addison, Texas, Nerium International is a relationship marketing company led by a seasoned executive team with over 150 years of collective experience in the industry. Says Olson, "Nerium International will raise the bar for the direct sales industry. We've spent time creating world-class tools for our Brand Partners. They're equipped with the marketing tools and assets to reach consumers in person, online, and even via their smartphones and iPads."

The direct sales industry generates $125 billion per year, and skincare is the dominant category in the industry. Due to the revolutionary nature of NeriumAD, says Olson, "We expect this to be the most successful launch

New Freedom Champions × | windmill hotel carlsbad - ... | Hotel in Carlsbad Californi... × | Netflix | LegalShield × | LegalShield × | Compose Mail - Yahoo! M... | +

facebook.com/groups/1532503536369939/permalink/3709553496727222

market, NeriumAD Age-Defying Treatment, dramatically reduces the appearance of fine lines and wrinkles, hyperpigmentation, uneven skin texture, enlarged pores, and aging or sun-damaged skin. The night cream is intended for daily use and has proven to be safe for all skin types.

Don Smothers, Chief Executive Officer of Natural Technology, Inc., states "Although I have formulated thousands of products in my 40+ years in the skincare manufacturing industry, I have never seen a product that delivers results as quickly and effectively as NeriumAD."

Headquartered in Addison, Texas, Nerium International is a relationship marketing company led by a seasoned executive team with over 150 years of collective experience in the industry. Says Olson, "Nerium International will raise the bar for the direct sales industry. We've spent time creating world-class tools for our Brand Partners. They're equipped with the marketing tools and assets to reach consumers in person, online, and even via their smartphones and iPads."

The direct sales industry generates $125 billion per year, and skincare is the dominant category in the industry. Due to the revolutionary nature of NeriumAD, says Olson, "We expect this to be the most successful launch of a direct sales company in years."

The company has aggressive plans for both product development and global expansion.

Like · Comment · Follow Post

Sonia Orfano likes this.    ✔ Seen by 28

Denise Garrison No one cares! This is legalshield leader's of champions, not cream of the year champions! Not saying its a bad product but spam someone else's page!
about an hour ago via mobile · Like · ♥ 2

Write a comment...

Hassan Johnson and Nathan Bourne are now friends.

Corey Christina shared NBA Memes's photo.

Robert Ford commented on his own status: "Dats wassup"

Shan Sebastian commented on Teresa Antony's photo: "Simon. LOL."

Jacqueline Padilla commented on her own status: "At home then I have to work at 5"

Troesy Makthepharnks likes Janey Bolina's photo.

Aaron Teruya just was thinking this would be a

Aay Jay
Andrea Walton
Bhavandeep Singh
Bonnie Robinson
Cameron Arthur
Danny Rivera
John Swafford
Kelly Feest
Lawrence Richard Jose
Mel Roberson
Silver-Renee' Julius
Tammy Nguyen

Aaron Teruya

Search



LS San Diego Market | windmill hotel carlsbad - ... | Hotel in Carlsbad Californi... | Netflix | LegalShield | LegalShield | Compose Mail - Yahoo! M...

facebook.com groups 193234029295793

usain bolt 2012

**facebook**

Search for people, places and things

Adam Elhag Home

**Adam Elhag**

News Feed
Messages
Events 8

Team New Freedom - Drea...
LS Team NEW FREEDOM
New Freedom Champions
Elite Leaders
Team New Freedom Chicago
**LS San Diego Market**
LEGALSHIELD San Diego
Team New Freedom Executi...
LegalShield Forum
San Diego Young Profession...
SDs Finest Artist Guild
LegalShield of Virginia
The OFFICIAL LegalShield S...
Body By Vi 8
Create Group...

App Center 20+
Photos 3

**LS San Diego Market** About Events Photos Files ✓ Notifications

Write Post | Add Photo / Video | Ask Question | Upload File

Write something...

**Todd Cahill**
FOR IMMEDIATE RELEASE

Addison, Texas – August 29, 2011

Nerium™ International, LLC of Addison, TX and Nerium SkinCare™, Inc., a subsidiary of Nerium Biotechnology, Inc. ®, of San Antonio, TX are pleased to announce their exclusive licensing partnership. This partnership was designed with the purpose of building a global brand through the development and distribution of breakthrough products in the anti-aging skincare market.

...

Continue Reading

Like · Comment · Follow Post

**Alex Medina**
More excited than Ever!!!!! who wants to compete to Platinum :)

Like · Comment · Follow Post

Alex Medina, Earl Jackson, Tara Paustenbach and 2 others like this.

View all 4 comments

**Alex Medina** Bro I'm colored blind...all I see is platinum :)
22 hours ago via mobile · Like

**Brandon Sullivan** Haha good 1. Let's get it then!
3 hours ago via mobile · Like

Write a comment...

93 members

+ Add People to Group

**What should people post in this group?**
Add a Description

**People You May Know** See All

**Millie Baker**
40 mutual friends
Add Friend

**America Legalshield**
LegalShield LegalInsurance
44 mutual friends
Add Friend

**Sponsored** See All

**Become a Foster Parent!**
angelsfoster.org
Interested in transforming the life of a child? Visit Angels Foster today and learn how to become an exceptional foster parent!

**Want a killer body?**
fitcompound.com
Fitness Compound will get you in shape fast. Get results and a FREE class. Choose Zumba To

**Koors Insurance**
Professional Services,

**Brian 8-Mar Mareallo** commented on Christian Flores's post in Jason Trout Memorial Group: "http://www.youtube.com/watch?v..."

**Hassan Johnson** and Nathan Bourne are now friends.

**Corey Christina** shared NBA Memes's photo.

**Robert Ford** commented on his own status: "Dats wassup"

**Shan Sebastian** commented on Teresa Antony's photo: "Simon. LOL"

**Jacqueline Padilla** commented on her own status: "At home then I have to work at 6"

Aay Jay
Andrea Walton
Bhavandeep Singh
Bonnie Robinson
Cameron Arthur
Danny Rivera
John Swafford
Kelly Feest
Lawrence Richard Jose
Mel Roberson
Silver-Renee' Julius
Tammy Nguyen

Aaron Teruya
Search

2:44 PM
8/13/2012

IN THE DISTRICT COURT OF PONTOTOC COUNTY

STATE OF OKLAHOMA

| | |
|---|---|
| PRE-PAID LEGAL SERVICES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. _____ |
| | ) |
| TODD CAHILL, | ) |
| | ) |
| Defendant. | ) |

## **TEMPORARY RESTRAINING ORDER**

TO:   TODD CAHILL

This matter comes before the Court on this _____ day of August, 2012, on Plaintiff's

Motion for Temporary Restraining Order supported by affidavits and the verified Petition filed

this same date. Plaintiff Pre-Paid Legal Services, Inc., now known as LegalShield

("LegalShield") requests that Defendant Todd Cahill, his agents, representatives or any other

person acting by or under his authority, be restrained from contacting any LegalShield Associate

to directly or indirectly solicit or encourage the associate to join Defendant in a new company or

organization, or to leave LegalShield for the eventual purpose of joining a new organization.

LegalShield also requests that Defendant also be otherwise restrained from using trade secret

information of LegalShield for any purpose.

Plaintiff LegalShield appears through counsel, Timila S. Rother of Crowe & Dunlevy.

Defendant Todd Cahill appeared through counsel, Gary Smith of Graham, Bright and Smith.

Having reviewed the Motion and verified Petition, the Court FINDS:

1.  LegalShield has made a *prima facie* showing that Defendant has contacted one or more individuals known by Defendant to be LegalShield Associates and solicited or encouraged those individuals to join Defendant at a new network marketing company. LegalShield has shown that Defendant knew or had access to the information regarding these associates based upon Defendant's prior relationship with LegalShield, and that Defendant entered into on one or more Agreements acknowledging that the associate information was the trade secret information of LegalShield and that Defendant would not solicit LegalShield associates for 2 years after termination of his Agreements. Therefore, LegalShield has shown a likelihood of success on the merits.

2.  LegalShield has made a *prima facie* showing that it will suffer irreparable harm if the conduct of Defendant is not restrained to maintain the status quo. The injury is irreparable because not only is Defendant himself soliciting Associates, but also each Associate successfully solicited by Defendant may solicit another Associate until LegalShield's sales force is diminished to a point which cannot be restored or its injury calculated in damages. The diminishment of its sales force will result in the also potentially immeasurable loss of Membership sales. The conduct of Defendant also causes irreparable damage by disruption and discouragement of the remaining LegalShield sales force.

3.  The harm to LegalShield substantially outweighs any potential harm to Defendant, as Defendant can solicit salespeople for his new network marketing company from anyone except LegalShield Associates; thus prohibition from soliciting LegalShield Associates does not impair Defendant's chances to fairly build his business at his new company.

4.  Further, an order maintaining the status quo until the matter is finally determined is not contrary to the public interest.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Defendant, Todd Cahill, his agents, servants, representatives, and all other persons acting by and under his authority or in concert with him, are restrained from contacting, directly or indirectly any LegalShield Associate to, directly or indirectly, solicit or encourage the Associate to join Defendant in a new company or organization, or to leave LegalShield for the eventual purpose of joining another company, and is otherwise restrained from using trade secret information of LegalShield for any other purpose.

2

This restraining order shall remain in effect until _____ at _____ at which time Defendant will be given an opportunity to show why this Temporary Restraining Order should not be made a temporary injunction at a hearing before the undersigned Judge at the Pontotoc County Courthouse.

IT IS SO ORDERED this _____ day of August, 2012 at _____.

_____
Thomas S. Landrith
Judge of the District Court

Approved:

_____
Brooke S. Murphy, OBA #6524
Timila S. Rother, OBA #14310
**CROWE & DUNLEVY**
A Professional Corporation
20 North Broadway, Suite 1800
Oklahoma City, OK 73102-8273
(405) 235-7735
(405) 272-5278 (Facsimile)
brooke.murphy@crowedunlevy.com
timila.rother@crowedunlevy.com

**ATTORNEYS FOR PLAINTIFF**
**PRE-PAID LEGAL SERVICES, INC.**

2352619.01

3