IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PRE-PAID LEGAL SERVICES, INC. ) <br> ) <br>     **Plaintiff,** ) <br> ) <br>v. ) <br> ) <br>TODD CAHILL, ) <br> ) <br>     **Defendant.** ) | Case No. 6:12-cv-346-JHP |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION TO COMPEL TERM SEARCHING OF ESI**

Defendant Todd Cahill submits this response to Plaintiff Pre-paid Legal Services, Inc.'s ("PPLSI" or "LegalShield") Motion to Compel Term Searching of ESI ("Mot."). PPLSI requests 456 search terms, including 352 separate names. After good faith efforts to narrow the search terms to a reasonable level, Cahill did not object to 336 search terms, including 326 names. PPLSI did not agree to remove any of their 456 search terms, and now moves to compel. Because the discovery requested is disproportionate to the needs of this case, Cahill requests the Motion to Compel be denied.

**I.     BACKGROUND AND ESI**

PPLSI claims Cahill violated the Oklahoma Uniform Trade Secrets Act and violated a contractual anti-solicitation clause. In 2013, the Court entered an injunction barring Cahill from "**initiating contact** with current PPLSI sales associates and employees." Report and Recommendation (Dkt. #31 at 21) (emphasis added), affirmed and adopted by Court Order (Dkt. #32). The Court further found that PPLSI had not shown that Cahill was "in possession of any trade secret information." *Id.* at 10, because Cahill did not have access to PPLSI's internal database.

To ensure efficient discovery, the parties agreed to an ESI Protocol. *See* PPLSI v. Cahill Electronic Discovery Protocol ("Protocol") (Dkt. #100-4). Under the Protocol, a neutral third party, Digital Mountain, imaged Cahill's electronic devices repeatedly. The four collections spanned from 2012 to 2015 and involved over 2600 GB of device space. *See* Todd Cahill Device Inventory (Ex. 1). Digital Mountain estimates each GB constitutes 15,000 to 100,000 pages to review. Thus, even if only 10% of the device space is full, that 260 GB constitutes 3.9 million to 26 million pages of documents in the universe being searched.

PPLSI requested that 456 search terms, including 352 separate names, be searched. After reviewing the voluminous list, Cahill did not object to 336 of the requested search terms, including 326 of the requested names.[1] This includes every PPLSI associate that PPLSI believes Cahill recruited. The unobjected search terms provide PPLSI with discovery that exceeds the needs of this case.

## II.  PPLSI'S REQUESTS CREATE A COSTLY BURDEN DISPROPORTIONATE TO THE NEEDS OF THE CASE.

PPLSI's Motion provides a stark example of why the Rules Advisory Committee recently reemphasized the importance of proportionality in discovery. Here, the cost to review millions of pages of ESI is not "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).[2]

The Rules Advisory Committee recommended changes to Rule 26 due, in part, to the escalating cost and breadth of electronic discovery. The 2015 revision seeks to "restore[]" proportionality to its "original place in defining the scope of discovery." Fed. R. Civ. P. 26, Adv.

---

[1] Cahill objects to the timeframe proposed by PPLSI for all search terms because the timeframe does not correlate to any relevant activity. *See infra* § IV.A. But Cahill does not object to these 336 search terms themselves.

[2] Federal Rule 26 will be revised December 1, 2015. The citations here refer to the new version of Federal Rule 26.

Comm. Notes. The parties have an obligation to "consider these factors in making discovery requests, responses, or objections." *Id.* The amendment further removes the provision permitting discovery of "any matter relevant to the subject matter involved in the action." *Id.* Additionally, the amendment removes the discovery of material that is only "reasonably calculated to lead to the discovery of admissible evidence." Finding that parties used "reasonably calculated" too broadly, the committee has narrowed the scope of discovery. The Committee's revised scope of discovery provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and **proportional to the needs of the case**, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1) (emphasis added).

Here, PPLSI is attempting to use discovery in this case to obtain documents for unrelated litigation between PPLSI and Nerium. In a simple non-solicitation case, PPLSI would be searching for information related to whether Cahill initiated contact with PPLSI associates. Cahill has not objected to terms that probe that issue. Indeed, Cahill has not objected to 93% of the names listed by PPLSI because those names could be relevant.

However, PPLSI's search terms are so broad that most of the multimillion pages would be hits (i.e. "Nerium" "attorney" "enroll" "iPad" "opportunity" "PM me"). And the Protocol requires Cahill's counsel to review all pages for privilege and responsiveness. Protocol (Dkt. #110-4) ("Counsel for Defendant will promptly review the documents and other information resulting from the search to cull out privileged or nonresponsive documents. All responsive, non-privileged

documents and information will be produced to Plaintiff."). The monumental time necessary to review all these documents is disproportionate to the needs of the case.

And the amount in controversy does not support the expense of reviewing millions of documents that are not related to the allegation that Cahill solicited PPLSI associates. PPLSI has brought numerous cases against other former PPLSI associates.[3] In each case, PPLSI claimed a breach of a non-solicitation clause, a trade secrets violation, and a debit balance owed by the former PPLSI associates to PPLSI. All but one case settled while arbitration was pending. The public records show that the settlement and judgment amounts are highly correlated with PPLSI's claimed debit balance. *See* Summary of Settlement Amounts (Ex. 3). In five cases, the settlement or arbitration award was exactly the same as the debit balance. *Id.* And the settlement value never exceeds the debit balance by more than $30,000. *Id.* Here, PPLSI claimed Cahill breached a non-solicitation clause and violated PPLSI's trade secrets, but unlike past cases, PPLSI does not claim a debit balance. Given the value of past cases, the amount in dispute here is well below $50,000.

Cahill objects to the vastness of PPLSI's search terms given the potential amount in dispute. Cahill would expend more than the value of the case in reviewing documents. Cahill also objects to the many efforts of PPLSI to acquire discovery about Nerium's practices that are not relevant to the central issues in this dispute: whether Cahill initiated contact with PPLSI associates

---

[3] *PPLSI v. Mark O. Smith*, Case No. 11-cv-333 (E.D. Okla.); *PPLSI v. Toan Nguyen*, Case No. 12-cv-023 (E.D. Okla.); *PPLSI v. Cedric Moore*, Case No. 13-cv-215 (E.D. Okla.); *PPLSI v. Scott & Katherine Christiansen*, Case No. 13-cv-355 (E.D. Okla.); *PPLSI v. Percey Darin Kidd*, Case No. 13-cv-357 (E.D. Okla.); *PPLSI v. Mary Skinner*, Case No. 13-cv-540 (E.D. Okla.); *PPLSI v. Michael Shouhed*, Case No. 14-cv-034 (E.D. Okla.); *PPLSI v. Kelly Feest*, Case No. 14-cv-035 (E.D. Okla.); *PPLSI v. Oliver Marshak*, Case No. 14-cv-036 (E.D. Okla.); *PPLSI v. Steve Guerrero*, Case No. 14-cv-037 (E.D. Okla.); *PPLSI v. Yardan Krampf*, Case No. 14-cv-038 (E.D. Okla.) (collectively "PPLSI Lawsuits").

and PPLSI's decision to cutoff Cahill from his residual payments. Because the search term request far exceed the needs of the case, Cahill requests the Court deny the Motion to Compel.

### III. PPLSI'S REQUESTS ARE BASED ON A MISUNDERSTANDING OF THE LAW GOVERNING NON-SOLICITATION AGREEMENTS AND THE COURT'S INJUNCTION

PPLSI bases much of its Motion on a misunderstanding about what constitutes solicitation and the scope of the Court's injunction. The Court's injunction barred Cahill from "**initiating contact** with current PPLSI sales associates and employees." Report and Recommendation (Dkt. #31 at 21) (emphasis added).[4] The Court's emphasis on initiating contact was purposeful and repeated. *Id.* at 14 ("Defendant clearly targeted and initiated contact with Cabradilla..."); *id.* ("While PPLSI has not shown that Defendant has made initial contact with any other PPLSI sales associate..."); *id.* ("...if he is not enjoined from initiating contact with current PPLSI associates"); *id.* at 15 ("...a preliminary injunction should issue barring Defendant from initiating contact with PPLSI sales associates in an effort to solicit them to join Nerium.").

And the Court's keen focus on initiating contact comports with Oklahoma law on non-solicitation agreements. Oklahoma generally disfavors anticompetitive non-compete agreements. 15 O.S. § 219A(B) (declaring non-compete agreements "void and unenforceable"); 15 O.S. § 217 ("Every contract by which any one is restrained from exercising a lawful profession, trade or business of any kind, otherwise than as provided by Sections 218 and 219 of this title, or otherwise than as provided by Section 2 of this act, is to that extent void."). The Oklahoma Constitution declares that all "persons have the inherent right to life, liberty, the pursuit of happiness, and **the enjoyment of the gains of their own industry**." OKLA. CONST. Art. II, § 2 (emphasis added).

---

[4] Because LegalShield was only due two years of non-solicitation under the agreements, Cahill intends to ask the Court to dissolve the injunction to permit the normal marketplace to return as LegalShield has received almost an entire additional year more protection than it bargained for.

Oklahoma public policy voids noncompete agreements to allow citizens to "engage in the same business as that conducted by the former employer or in a similar business." 15 O.S. § 219A(A). Noncompete agreements are contrary to "expressed public policy." *Howard v. Nitro-Lift Technologies, LLC*, 273 P.3d 20, 29 (Okla. 2011), *rev'd on other grounds*, 133 S. Ct. 500 (2012). Oklahoma permits non-solicitation agreements as a narrow exception to the public policy against anticompetitive noncompete agreements. 15 O.S. § 219B.

The injunction's focus on initiating contact also comports with other states' law governing non-solicitation agreements:

> The parties' dispute centers on the meaning of "solicit." According to Stacey, a prohibition on "soliciting" does not bar him from doing business with a customer so long as that customer initiates the business. In other words, so long as the customer first contacts Stacey, and Stacey does not first contact the customer, Stacey has not "solicited" the customer in violation of his agreement with Honeywell. The Court was initially skeptical of Stacey's interpretation, but, after reviewing the case law, the Court is persuaded that Stacey's interpretation is supported by what appears to be the great weight of authority.

*Honeywell Int'l Inc. v. Stacey*, 2013 WL 9851104, at *8 (D. Minn. Dec. 11, 2013). Many states utilize a similar "first contact" rule. *Mona Elec. Grp., Inc. v. Truland Serv. Corp.*, 56 F. App'x 108, 110 (4th Cir. 2003) (per curiam) (Maryland: "plain meaning of 'solicit' requires the initiation of contact."); *Bajan Grp., Inc. v. Consumers Interstate Corp.*, 958 N.Y.S.2d 59 (N.Y. Sup. Ct. 2010) ("Thus, in order for the non-solicitation clause to be violated, it must be shown that Bajan initiated contact with Kidde..."); *ING Life Ins. & Annuity Co. v. Gitterman*, 2010 WL 3283526, at *4 (D.N.J. Aug. 18, 2010) ("Merely being in contact with former clients does not constitute solicitation.").

In line with Oklahoma public policy disfavoring anticompetitive non-compete agreements and other states' law focusing on the initiation of contact, this Court already determined that initiating contact requires more than mere social media postings. *See* Report and Recommendation

(Dkt. #31 at 15-21). The Court found posting information about his new job on Facebook does "not constitute solicitation." *Id.* at 16. And the Court determined that "posting a job opportunity on a social networking page" that would likely be viewed by PPLSI employees was not a solicitation. *Id.* at 18. Further, if a PPLSI associate contacts Cahill about his new position, Cahill has not violated any agreement. *Id.* Given that Cahill's "mere departure would have led to confusion and interest among associates in his downline," it is unsurprising that many PPLSI associates did reach out to Cahill. *Id.* at 20.

Despite the Court's clarity in granting an injunction against "initiating contact," PPLSI pretends that Cahill is not permitted to converse with those who reach out to him or to post information on social media about his current company. *See* Mot. at 10 (listing conversations between Cahill and former colleagues as "evidence of Cahill's ongoing solicitation in specific violation of the Injunction"). PPLSI provides numerous examples and exhibits suggesting Cahill communicates with his former colleagues. *See* Dkt. 100-2 (Moore phone records); Mot. at 9 (uncited allegation that Cahill "recruited" Oliver Marshak, Kelly Feest, and Mary Skinner); Mot. at 10 (evidence suggests Cahill was "talking with Feest"). Those conversations do not show that Cahill initiated contact.

Testimony provided by PPLSI shows that Cahill gave appropriate directions to ensure others did not violate a PPLSI anti-solicitation policy:

> Q. And what did [Cahill] tell you?
>
> A. "**Don't contact anyone.** If you're contacted, make sure you get a first contact e-mail."
>
> Q. And when he said "don't contact anyone," did he mean -- did he specify whether he meant anyone at all, or was he talking about LegalShield associates?
>
> A. LegalShield associates.

7

>    Q.   So he told you not to contact any LegalShield associates?
>
>    A.   Yes.
>
>    Q.   And if they contacted you, he said you should get a first contact e-mail.
>
>    A.   Yes.

Excerpt of Dep. of Oliver Marshak at 15:7-19 (Dkt. #100-12 at 4) (emphasis added).

PPLSI's misunderstanding about the scope of the injunction leads it to allege that Cahill cannot be involved in offering former PPLSI associates positions at Nerium. The injunction barred "initiating contact." PPLSI seeks discovery concerning Nerium Corporate Officers to use in other litigation. Mot. at 12-13. That discovery is not relevant here because it does not relate to whether Cahill initiated contact with current PPLSI associates. Whether "Olson and/or Nerium immunized Cahill and other former associates... from the consequences of their conduct" is not related to whether Cahill initiated contact with current PPLSI associates. Mot. at 12. Who pays Cahill's attorneys' fees is not relevant to whether Cahill initiated contact with current PPLSI associates. Mot. at 13. Whether Nerium offers so-called "bridge payments" is not relevant to whether Cahill initiated contact with current PPLSI associates. Mot. at 13. And "[n]ame dropping" in public Facebook posts is not solicitation. Report and Recommendation (Dkt. #31 at 16).

Because Cahill does not object to 336 names of people that PPLSI seeks to search, any communications with those people will be discovered along with any evidence of who initiated contact. PPLSI's effort to expand discovery beyond what is proportionate to this case's needs should not be tolerated.

## IV.   CAHILL'S OBJECTIONS TO PPLSI'S SEARCH TERMS.

Cahill has not objected to 336 search terms, including 326 names. This good faith effort to provide voluminous amounts of emails, texts, and other documents that require significant time to

review for privilege and non-responsiveness is already more than is proportional to the needs of the case. The only objections made are explained here:[5]

A. TIME

i. COMMUNICATIONS AFTER AUGUST 14, 2014

PPLSI desires discovery long after the two year non-solicitation provision would have applied. The Court's injunction against initiating contact should be dissolved as PPLSI has already obtained more than the two years in the agreements. Similarly, discovery should not extend beyond two years after the TRO was entered.

ii. COMMUNICATIONS BEFORE AUGUST 1, 2012

PPLSI desires discovery for a year before Cahill joined Nerium, back to August 1, 2011. This broad parameter will produce no information shedding light on whether Cahill initiated contact with PPLSI associates after joining Nerium or after the injunction was entered. Instead, this time frame will add to the cost and burden of managing the already unnecessarily voluminous data base.

PPLSI's only argument for extending discovery an extra year before Cahill joined Nerium is hearsay posted on Facebook by Kelly Feest. *See* Dkt. #100-15. And that hearsay concerns the recruiting of Cahill, not Cahill soliciting a PPLSI associate. The amount of communications being requested is already disproportionate to the needs of the case, seeking evidence that predates Cahill joining Nerium is not reasonable.

B. OVERLY BROAD AND NOT CALCULATED TO DISCOVER ADMISSIBLE EVIDENCE

As Cahill does not object to the vast majority of names, any communications with those people that mention "attorneys" or "downline" or "bridge" would already be caught. PPLSI's

---

[5] A spreadsheet with all proposed search terms identifying which are objected to on each ground is attached as Exhibit 2.

9

desire to have communications to the remaining names takes the request far afield from relevant information. For example, the attempt to catch internal Nerium communications on Cahill's devices about his and others' downlines is an unvarnished attempt to acquire trade secrets. Such requests are unduly burdensome compared to the needs of the case.

### C. NOT RELATED TO CLAIMS MADE

PPLSI identifies many terms that are not related to its non-solicitation claim and would not assist in identifying who made the initial contact (i.e. "MidOcean" "Nerium"). Such requests are unduly burdensome compared to the needs of the case.

### D. OVER-INCLUSIVE

Numerous proposed search terms are words used in normal written communication (i.e. "attorney" "Nerium" "bridge" "iPad" "inbox me" "login" "PM me"). The terms are so generic that they, singularly or collectively with other generic search terms, will produce an enormous amount of documents that are irrelevant. Sifting through these documents will be costly and unnecessary. Such requests are unduly burdensome compared to the needs of the case.

### E. UNRELATED LITIGATION

PPLSI seems to be attempting to acquire information unrelated to this litigation, but related to its lawsuits with Nerium and its employees. The proposed search terms include Nerium leadership who are not connected to any claim that Cahill initiated contact with PPLSI associates (i.e. Jeff Olson, Mark Smith). The Court need not tolerate this end-around that does not pertain to the needs of this case.

## V. CONCLUSION.

The parties agree on 336 unobjected search terms, including 326 names of people that PPLSI thinks Cahill may have initiated contact with. That search is sufficient to identify any possible violation of the injunction against initiating contact with current PPLSI associates.

To allow PPLSI to search for commonplace terms across many GB of imaged drives would cause unnecessary costs and burdens that are disproportionate to the claims made. For these reasons, Cahill requests the Court uphold his objects and order the search terms to be used are the 336 unobjected terms for the time period between August 1, 2012 and August 14, 2014.

Respectfully submitted,

/s/ Jay P. Walters
Jay P. Walters, OBA #17364
Adam C. Doverspike, OBA #22548
**GABLEGOTWALS**
One Leadership Square, 15th Floor
211 N. Robinson
Oklahoma City, OK  73102-7101
Telephone:  (405) 235-5500
Facsimile:   (405) 235-2875
E-Mail:  jwalters@gablelaw.com
E-Mail: adoverspike@gablelaw.com

Gary E. Smith, TX Bar No. 18593700
**GARY E. SMITH, P.C.**
Attorneys and Counselors
Two Lincoln Centre
5420 LBJ Freeway, Suite 300
Dallas, TX 75240
Telephone: (972) 788-5300
Facsimile:  (972) 770-2156

Ron Wright
**WRIGHT STOUT & WILBURN**
PO Box 707
Muskogee, OK 74402
Telephone: (918) 682-0091
Facsimile: (918) 683-6340
ron@wswlaw.com
**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 2nd day of December, 2015, I electronically transmitted the foregoing instrument to the Clerk of Court using the ECF System for filing. Based on the records currently on file the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Brooke S. Murphy
Paige Masters
Timila S. Rother
**Crowe & Dunlevy**
brooke.murphy@crowedunlevy.com
paige.masters@crowedunlevy.com
timila.rother@crowedunlevy.com,

                                              */s/ Jay P. Walters*
                                              Jay P. Walters