IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

PRE-PAID LEGAL SERVICES, INC., )
)
        Plaintiff, )
)
vs. ) Case No. 12-CV-346-JHP
)
TODD CAHILL, )
)
        Defendant. )

**OPINION AND ORDER**

Before the Court are Defendant's Motion to Dismiss or For Judgment as a Matter of Law (Doc. No. 77) and Plaintiff's Response in Opposition (Doc. No. 81). After consideration of the briefs, and for the reasons stated below, Defendant's Motion to Dismiss or For Judgment as a Matter of Law is **DENIED**.

**BACKGROUND**

Plaintiff Pre-Paid Legal Services, Inc., now known as LegalShield,[1] sells legal service contracts ("memberships"), which independent sales associates sell through a "network marketing" system. (Doc. No. 2-1 (Petition), ¶ 3). Associates receive commissions both on the memberships they sell and on memberships sold by the "downline" associates they recruit. (*Id.* ¶ 5). The names and identities of LegalShield's sales associates, and those in the downline of the network marketing system, are treated as confidential and proprietary trade secrets by LegalShield. (*Id.* ¶¶ 5-6). LegalShield associates agree in writing to maintain the confidentiality of this information and to use such information only for LegalShield business, both during the associate's relationship with LegalShield and after departure. (*Id.* ¶ 6).

---

[1] For ease of reference, the Court will use the name "LegalShield" to refer to Plaintiff throughout this Opinion and Order.

1

According to the Petition, Defendant Todd Cahill ("Cahill") became a LegalShield associate in 2004. (*Id.* ¶ 7). Cahill was promoted to Regional Manager in 2008, and by 2011, he had risen to the position of Regional Vice-President of Illinois. (*Id.* ¶¶ 9-10). In his 2004 Associate Agreement, Cahill agreed that the identity of associates in his downline is "confidential, proprietary information that belongs to [LegalShield]," and he agreed not to "proselytize, recruit or solicit in any manner any [LegalShield] Associate . . . into any other company or organization" during the term of his Associate Agreement and for two years thereafter. (*Id.* ¶ 8; Doc. No. 77-1 (blank Associate Agreement), ¶¶ 8, 20). In 2008, Cahill signed a Regional Manager Agreement, in which Cahill again acknowledged his access to and obligation to maintain confidentiality of LegalShield trade secrets, and in which he agreed not to solicit any sales associate to another company for at least two years after termination of the agreement. (Doc. No. 2-1, ¶ 9). In 2011, Cahill signed a Regional Vice-President Agreement, in which he again confirmed and agreed that the identity of LegalShield's sales associates was a trade secret and promised he would not solicit any sales associates to join another company for at least two years after termination of his relationship with LegalShield. (*Id.* ¶ 10).

In August 2012, Cahill left LegalShield and joined Nerium International ("Nerium"). As he prepared to leave LegalShield, Cahill allegedly contacted his downline associates to solicit them to join Nerium. (*Id.* ¶¶ 13-16). At a meeting of Cahill's downline associates on August 9, 2012, which Cahill organized under false pretenses of conducting LegalShield business, he allegedly urged the associates to e-mail him or look at his Facebook page to find out where he was going. (*Id.* ¶ 13). He also allegedly made disparaging and untrue statements about LegalShield at the meeting to lure them away from LegalShield to another company. (*Id.*). Immediately prior to that meeting, Cahill also allegedly "targeted and solicited" another

2

LegalShield Regional Manager to join Nerium and disparaged LegalShield, its management, and its compensation plan. (*Id.* ¶ 14). Cahill also allegedly posted information about Nerium on a Facebook group site established for the leaders in Cahill's LegalShield organization, with knowledge that the members of that group were LegalShield associates and with the intent that those associates join Nerium. (*Id.* ¶ 16).

LegalShield filed this action against Cahill in the District Court of Pontotoc County on August 14, 2012, asserting claims for breach of contract, misappropriation of trade secrets, and tortious interference with contract or business relations. (*See* Doc. No. 2-1). While the case was pending in state court, LegalShield obtained a Temporary Restraining Order that prohibited Cahill from (1) contacting LegalShield associates to directly or indirectly solicit or encourage them to join Cahill in a new company or leave LegalShield for the eventual purpose of joining a new organization or (2) using trade secret information of LegalShield for any other purpose. (*See* Doc. No. 8-1).

Cahill then removed the action to this Court based on diversity jurisdiction. (Doc. No. 2). LegalShield sought a preliminary injunction from this Court, which the Court referred to Magistrate Judge Steven Shreder. On January 22, 2013, Magistrate Shreder issued a Report and Recommendation ("R&R"), which recommended that a preliminary injunction should issue barring Cahill "from initiating contact with [LegalShield] sales associates in an effort to solicit them to join Nerium." (Doc. No. 31, at 15). The Magistrate did not recommend an injunction should issue prohibiting Cahill from using LegalShield's trade secrets, because the Magistrate found LegalShield did not have evidence that Cahill was in possession of LegalShield's trade secrets at that time. (*Id.* at 10). The Magistrate further recommended that Cahill's unopposed Motion to Stay Pending Arbitration be granted. This Court affirmed and adopted the R&R on

February 12, 2013. (Doc. No. 32). The parties then initiated arbitration proceedings. However, Cahill failed to pay his share of the arbitration fees, resulting in termination of the arbitration proceedings. (*See* Doc. Nos. 33, 45). LegalShield then moved to lift the stay in this case, which this Court granted over Cahill's opposition. (Doc. No. 47). Cahill appealed the order lifting the stay of proceedings to the Tenth Circuit, and on May 26, 2015, the Tenth Circuit affirmed the Court's order. (Doc. No. 71). On July 22, 2015, the Court lifted the stay. (Doc. No. 74).

On July 24, 2015, Cahill moved to dismiss the Petition pursuant to Federal Rule of Civil Procedure 12(b)(6) or 12(c). (Doc. No. 77).[2] LegalShield filed a response in opposition on August 7, 2015. (Doc. No. 81). Cahill did not file a reply brief, but on August 28, 2015, he filed an Answer to the Petition and Counterclaims. (Doc. No. 88). On September 18, 2015, LegalShield filed an Answer to the Counterclaims. (Doc. No. 91).

## DISCUSSION

In considering a Rule 12(b)(6) motion, the court must accept all well-pleaded allegations of the complaint as true, and must construe them in the light most favorable to the plaintiff. *See Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1284 (10th Cir. 2008). To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff bears the burden to frame "a complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief. *Twombly,* 550 U.S. at 556. "A pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.'" Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of further

---

[2] The Court notes that Cahill's brief, though requesting dismissal of the entire Petition, does not directly address LegalShield's third cause of action, for tortious interference with contract or business relations. Accordingly, that claim remains for resolution.

factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).

"A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000) (citing *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 528 (10th Cir. 1992)).[3] In either instance, the Court is limited to consideration of specific allegations of the pleadings, documents attached to the pleadings or incorporated by reference, and documents "central to the plaintiff's claim and referred to into the complaint," at least "where the document's authenticity is not in dispute." *Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008) (quoting *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253-54 (10th Cir. 2005) (quotation marks omitted). When other matters outside the pleadings are relied upon, "a district court must convert a motion to dismiss into a motion for summary judgment." *Utah Gospel Mission*, 425 F.3d at 1253.

## I. Breach of Contract (First Cause of Action)

Cahill asserts several arguments challenging the viability of LegalShield's breach of contract claim. The Court will address each argument separately.

### A. The Associate Agreement is Not Illusory as a Matter of Law

First, Cahill argues LegalShield's contract-based claim fails because the Associate Agreement is illusory and therefore void. Paragraph 23 of the Associate Agreement reads in relevant part: "these Policies and Procedures may be amended from time to time by [LegalShield] by publication in a means reasonably available to Associates generally, including by publication in periodic communications to Associates or on the [LegalShield] website."

---

[3] Cahill does not explain why he seeks alternative relief pursuant to Federal Rule of Civil Procedure 12(c), as the pleadings had not yet closed at the time of filing his motion. Because the standard of review is the same under either Rule 12(b)(6) or 12(c), however, the Court will not examine this issue further.

(Doc. No. 77-1, ¶ 23).[4] Cahill argues this provision is unilateral to LegalShield and renders the entire contract illusory and therefore unenforceable. *See generally Dumais v. Am. Golf*, 299 F.3d 1216, 1219 (10th Cir. 2002) (holding that "an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory."). However, as LegalShield correctly notes in its opposition brief, "[a] promise is illusory and thus unenforceable only where one party assumes no detriment or obligation and therefore has given no consideration." *Carroll v. Stryker Corp.*, 658 F.3d 675, 683 (7th Cir. 2011) (quotation omitted). Under Oklahoma law, "reasonable modification provisions are permissible," and an agreement "allowing a defendant company the unilateral right to modify or terminate the agreement is not illusory so long as reasonable restrictions are placed on this right." *Hardin v. First Cash Fin. Servs. and Pawn*, 465 F.3d 470, 479 (10th Cir. 2006).

Here, Cahill promised in the Associate Agreement to serve as a sales associate for LegalShield, while LegalShield promised to pay Cahill for his work during the term of the Agreement. Further, LegalShield's right to modify its policies and procedures did not render the Agreement illusory, because Cahill retained the right to reject LegalShield's modifications by terminating the Agreement. *See Carroll*, 658 F.3d at 683 (finding unilateral modification provision not illusory where employee had an opportunity to accept new terms by continuing to work for the company); *Hancock v. Am. Tel. & Tel. Co.*, 2011 WL 3629226, at *4 n.16 (W.D. Okla. Aug. 11, 2011) (finding defendants' right to unilaterally modify Terms of Service did not render agreement illusory where agreement required notice to customers of any material changes and customers could cancel if they did not agree to such changes).

---

[4] Although the blank Associate Agreement with Policies and Procedures (Doc. No. 77-1) was not attached to LegalShield's Petition, it is central to LegalShield's claims and referred to throughout the Petition, and LegalShield does not dispute its authenticity. Accordingly, the Court may consider it without converting the motion to one for summary judgment. See *Pace*, 519 at 1072.

LegalShield's right to modify the contract was also subject to a notice requirement, which Oklahoma courts have found to be a reasonable limitation on a party's unilateral right to modify. *See Wilson v. Gifford-Hill & Co.*, 570 P.2d 624, 626 (Okla. Civ. App. 1977) ("[W]here notice of cancellation is required the promisor is bound sufficiently so that his promise to buy or give notice of cancellation meets the requirement of consideration."). Additionally, the implied duty of good faith and fair dealing restricted LegalShield in exercising its discretion to modify its policies and procedures. *See Wathor v. Mut. Assurance Adm'rs, Inc.*, 87 P.3d 559, 561 (Okla. 2004) ("Every contract in Oklahoma contains an implied duty of good faith and fair dealing.").

Moreover, as LegalShield points out, Magistrate Shreder has already rejected Cahill's argument here in a similar case involving the same defense counsel—*Pre-Paid Legal Services, Inc. v. Moore*, Case No. CIV-13-215-SPS (E.D. Okla. March 27, 2015). In that case, Magistrate Shreder held, "the relevant notice provisions in the Associate Agreement coupled with their implied duty of good faith and fair dealing indicate that the Agreement was not illusory." *Id.* at 3 (citing *Carroll*, 658 F.3d at 683). Cahill has not attempted to distinguish Judge Shreder's conclusion in *Moore* regarding the enforceability of the same amendment clause at issue here, and the Court sees no reason to reach a different conclusion. Accordingly, the Court concludes Paragraph 23 of the Associate Agreement does not render the agreement illusory as a matter of law.

**B.     LegalShield Plausibly Alleges a Claim for Breach of the Associate Agreement**

Second, Cahill argues there is insufficient evidence on the record to show that Cahill solicited LegalShield associates in violation of the Associate Agreement.[5] Paragraph 20 of the

---

[5] Although the header on this section of Cahill's brief indicates he is challenging the enforceability of the non-solicitation clause as overly broad under Oklahoma law, the body of this section does not develop the enforceability argument at all. Regarding this discrepancy, LegalShield suggests Cahill left the header in his brief in error. Cahill

7

Associate Agreement provides an associate "may not proselytize, recruit or solicit in any manner any [LegalShield] Associate, including without limitation his or her first line, into any other company or organization during the term of the Associate Agreement and for 2 years after the date of any termination hereof." (Doc. No. 77-1, ¶ 20). LegalShield alleges Cahill breached the Associate Agreement by, among other things, contacting members of his LegalShield downline and soliciting them to join Nerium. (*See* Doc. No. 2-1, ¶¶ 13-16, 19).

Cahill argues "solicitation" requires a one-on-one "first contact" initiated by the solicitor for the explicit purpose of convincing a particular solicitee to do a particular thing, citing Black's Law Dictionary. Cahill argues his conduct, including putting a general announcement on Facebook about Nerium, is not, by definition, "solicitation" of any particular person. Cahill relies on Magistrate Shreder's R&R findings on the request for preliminary injunction, in which Magistrate Shreder stated, "Defendant's actions in this case are less explicitly inviting professional interest in Nerium than the act of posting a job opportunity on a social networking page that could, and likely would, be viewed by employees." (Doc. No. 31 (R&R), at 18).

Even if Cahill is correct in his reading of the term "solicitation" (which LegalShield disputes), it remains a question of fact whether Cahill made the first contact with his associates, as LegalShield alleges. (*See* Doc. No. 2-1, ¶ 13). On a motion to dismiss, LegalShield's allegations in the complaint are taken as true, even if those allegations are later disproven. Accordingly, it would be improper to dismiss LegalShield's breach of contract claim where LegalShield has alleged Cahill initiated the solicitation of his downline associates.

Moreover, it is inappropriate to dismiss LegalShield's claims based on evidence presented at the preliminary injunction hearing. By its nature, a preliminary injunction decision

---

did not respond to LegalShield's suggestion or offer any clarification. Accordingly, the Court will not address the enforceability of the non-solicitation clause under Oklahoma law.

is not conclusive with respect to subsequent findings at summary judgment and trial. *See Attorney Gen. of Oklahoma v. Tyson Foods, Inc.*, 565 F.3d 769, 776 (10th Cir. 2009) ("Because preliminary injunctions are 'customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits,' we do not require a moving party to 'prove his case in full at a preliminary injunction hearing.'") (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). *See City of Chanute, Kan. v. Williams Nat. Gas Co.*, 955 F.2d 641, 649 (10th Cir. 1992) ("In a summary judgment proceeding, the district court is not bound by its prior factual findings determined in a preliminary injunction hearing."), *overruled on other grounds by Systemcare, Inc. v. Wang Lab. Corp.*, 117 F.3d 1137 (10th Cir. 1997). Accordingly, Cahill's reliance on the R&R (Doc. No. 31) with respect to the factual findings on solicitation is misplaced.

In any event, LegalShield alleges improper solicitation conduct that extends beyond general Facebook posts and passively permitting sign-ups. The Petition additionally alleges Cahill organized a "mastermind" meeting of LegalShield leaders on false pretenses for the purpose of recruiting them to join Nerium. (Doc. No. 2-1, ¶ 13). The Petition further alleges Cahill directly contacted a LegalShield Regional Manager to encourage him to join Nerium. (*Id.* at ¶¶ 14-15). Cahill does not address these allegations in his brief. LegalShield's allegations, taken as true, adequately support LegalShield's claim for breach of the non-solicitation clause of the Agreement. Accordingly, the Court denies Cahill's motion on this ground.

  **C.**  **The Non-Solicitation Clause Is Governed by Oklahoma Law**

Third, Cahill argues California law should govern the Associate Agreement, because Cahill was a California resident when he entered into the agreement. Because the non-

solicitation clause cannot be enforced against him under California law, Cahill argues, LegalShield's breach of contract claim should be dismissed.

The Court can discern no reason why California law should apply to the Associate Agreement. Cahill offers no authority in support of his argument that California law should apply over the agreement's Oklahoma choice of law provision. (*See* Doc. No. 77-1, at ¶ 23 ("The Associate Agreement and Policies and Procedures will be governed by and construed in accordance with the laws of the State of Oklahoma.")). Cahill himself acknowledges "the Associate Agreement has an Oklahoma choice of law clause." (Doc. No. 77, at 12). Further, Oklahoma law allows parties to a contract to choose which state's laws govern their agreement, *Harvell v. Goodyear Tire & Rubber Co.*, 164 P.3d 1028, 1033-34 (Okla. 2006), and Oklahoma will enforce the choice of law provision when it is clear and unambiguous. *See Fossil Creek Energy Corp. v. Cook's Oilfield Servs.*, 242 P.3d 537, 542 (Okla. Civ. App. 2010) ("Where the language of a contract is clear and unambiguous on its face, that which stands expressed within its four corners must be given effect.") (citing *May v. Mid-Century Ins. Co.*, 151 P.3d 132 (Okla. 2006)). Cahill has provided no grounds for the Court to deviate from the Associate Agreement's express Oklahoma choice-of-law provision. Accordingly, Cahill's arguments regarding California law are irrelevant and will not be addressed further.[6]

## II. Misappropriation of Trade Secrets (Second Cause of Action)

Cahill next argues LegalShield has not plausibly alleged a claim for misappropriation of trade secrets under the Oklahoma Uniform Trade Secrets Act ("OUTSA"), OKLA. STAT. tit. 78, § 85 *et seq.* Specifically, Cahill argues that "LegalShield has not pled sufficient facts to state a

---

[6] To the extent Cahill is arguing a judgment of this Court would be unenforceable against him in California, Cahill misapprehends the law. Even if California public policy would prohibit enforcement of the Associate Agreement's non-solicitation clause in California, California would nonetheless be obliged to "give full faith and credit to a sister state *judgment*, regardless of the forum state's public policy on the underlying claim." *Metro. Creditors Serv. v. Sadri*, 15 Cal. App. 4th 1821, 1824 (Cal. Ct. App. 1993) (citing *Fauntleroy v. Lum*, 210 U.S. 230 (1908)).

plausible claim that any particular information was a trade secret, much less that Cahill used that secret to LegalShield's detriment." (Doc. No. 77, at 14). The Court disagrees. To state a claim for misappropriation of a trade secret under the OUTSA, LegalShield must allege (1) the existence of a trade secret; (2) misappropriation of the trade secret by Cahill; and (3) use of the secret to LegalShield's detriment. *See, e.g., MTG Guarnieri Mfg., Inc. v. Clouatre*, 239 P.3d 202, 209 (Okla. Civ. App. 2010). Here, LegalShield alleges a trade secret existed in the form of the names and contact details of its associates. (Doc. No. 2-1, ¶¶ 4-6, 24). LegalShield alleges Cahill misappropriated that secret by soliciting LegalShield associates to join Nerium. (*Id.* ¶¶ 13, 25). LegalShield also alleges it suffered damages as a result of Cahill's misappropriation of that secret, from which LegalShield derives independent economic value. (*Id.* ¶¶ 24-26). These allegations suffice to state a plausible claim for violation of the OUTSA. Whether LegalShield's associate information in fact qualifies as a "trade secret" under the OUTSA is not properly before the Court at this stage of litigation, as Cahill acknowledges. (*See* Doc. No. 77, at 14 ("the determination of whether specific information qualifies as a trade secret involves a factual inquiry.")).

Cahill cites *MTG Guarnieri Manufacturing., Inc. v. Clouatre*, 239 P.3d 202, 210 (Okla. Civ. App. 2010), and the cases cited therein, in support of his argument against plausibility. (Doc. No. 77, at 14). The Court, however, fails to see how *MTG* supports Cahill's argument. To the contrary, *MTG* demonstrates that whether information constitutes a trade secret under the OUTSA is a question of fact, which is not properly decided on a motion to dismiss. In *MTG*, the appeals court reversed the lower court's grant of summary judgment, in part because a question of fact remained whether the company's methods, systems, and processes qualified as protected trade secrets. *Id.* at 210-11. The cases cited in *MTG* do not support a different conclusion.

11

In a separate section of his brief, Cahill asserts this claim is insufficiently pleaded, because LegalShield fails to enumerate what "trade secrets" Cahill possessed. Cahill argues the only "trade secrets" he could have possessed were his upline and downline associate contacts, and his access to this information was terminated on the day he left LegalShield. However, LegalShield does allege Cahill's downline contact details constituted a trade secret, which Cahill allegedly misappropriated both during and after his employment at LegalShield. (*See, e.g.*, Doc. No. 2-1, ¶¶ 8, 13, 16). Whether Cahill actually misappropriated a trade secret, either during or after his employment at LegalShield, remains a question of fact not properly at issue here. As pleaded, LegalShield's claim is sufficient to withstand Cahill's motion.

Cahill also argues LegalShield's claim for misappropriation of trade secrets fails as "conclusively disproven." In this regard, Cahill argues Magistrate Shreder found in his R&R that there was "no violation prior to the injunction hearing except the alleged solicitation of Mike Cabradilla from which there were no damages." (Doc. No. 77 (Motion), at 16). Based on the R&R findings, Cahill asks the Court to (1) dismiss the case; (2) strike Paragraphs 12 through 16 and 24 from the Petition and grant Cahill judgment as a matter of law based on the remaining allegations; or (3) restrict this case to the time period between August 12, 2012, and August 11, 2014, because an injunction has been in place in LegalShield's favor for the last two years. As discussed above, however, the Court may not consider evidence obtained at a preliminary injunction hearing when evaluating a motion to dismiss. Accordingly, the Court declines to grant Cahill his requested relief, and Cahill's request to dismiss this claim is denied.

### III. Punitive Damages and Attorney's Fees Under the OUTSA

Next, Cahill argues LegalShield has not alleged a plausible claim of entitlement to punitive damages and attorney's fees for its misappropriation of trade secrets claim pursuant to

12

the OUTSA. As Cahill acknowledges, however, a court may award a party both punitive damages and attorney's fees under the OUTSA if the misappropriation is proven to be "willful and malicious." OKLA. STAT. tit. 78, §§ 88(B), 89(3). Cahill asserts the Petition fails to allege the misappropriation was either willful or malicious, or that Cahill even used any "trade secret." The Court disagrees. The Petition alleges Cahill's misappropriation of LegalShield's trade secret was knowing, deliberate, and undertaken by using false pretenses, all of which amount to willful and malicious conduct. (*See* Doc. No. 2-1, ¶¶ 13-16, 27). If those allegations are proven, LegalShield may be entitled to fees and punitive damages under the OUTSA. Accordingly, Cahill's motion to dismiss these damage claims is denied.

### IV. Validity of the "Debit Balance" and "Forfeiture" Clauses

Finally, Cahill argues LegalShield's collection of Cahill's debit balance upon his termination is punitive. Cahill also argues the "forfeiture" provision in the Associate Agreement is unenforceable under Oklahoma law, because it acts as a penalty clause. Paragraph 13 of the Associate Agreement reads:

> Any sums advanced to the Associate shall create a debit balance which will be a loan to the Associate from [LegalShield]. This balance will normally be repaid by withholding earned commissions, including renewals, but the Associate is ultimately liable for repayment upon demand by [LegalShield].

(Doc. No. 77-1, ¶ 13). LegalShield may terminate an Associate "for actions or statements by an Associate which [LegalShield], in its sole discretion, determines to be contrary to its best interests," including violation of the Associate Agreement or revealing any of LegalShield's trade secrets. (*Id.* ¶ 12(c)). When an Associate is terminated by LegalShield, he "will, effective on the date of the termination, no longer be entitled to any bonuses or commissions, including renewals, advanced or earned, personal or downline." (*Id.* ¶ 12). Cahill argues these provisions, which are not subject to negotiation, amount to an illegal penalty against terminated associates,

13

because LegalShield is entitled to retain any unearned commissions as of the associate's termination date while the terminated associate may be liable to pay off the debit balance if LegalShield demands it.

Cahill is correct that contractual penalty clauses are generally void unless they satisfy the requirements for valid liquidated damages clauses, as stated in *Sun Ridge Investors Limited v. Parker*, 956 P.2d 876, 878 (Okla. 1998). *See* OKLA. STAT. tit. 15, §§ 213-15 (providing that penalty clauses are void under Oklahoma law unless they satisfy the statute on liquidated damages). However, Cahill's arguments are irrelevant to this motion under Rule 12(b)(6) or Rule 12(c). Here, the appropriate question for resolution is whether the complaint alleges a plausible claim for relief. Instead, Cahill addresses the question of whether LegalShield can collect its debit balance from Cahill, which is not even alleged in LegalShield's complaint.

Whether LegalShield can collect damages from Cahill for breach of contract in addition to Cahill's debit balance is an issue not yet ripe for review, nor is the question of whether Cahill is entitled to a set-off of his commissions earned after his termination against his debit balance. LegalShield has not sought recovery of the debit balance in its pleadings, and the Court will not address a claim not raised in the complaint. Even if, as Cahill asserts, the claim "will surely be added to the Petition by amendment" (Doc. No. 77, at 1 n.1), it would be premature for the Court to address such a hypothetical claim. Accordingly, Cahill's arguments regarding the enforceability of the "debit balance" and "forfeiture" clauses do not merit further consideration at this stage of the case.

## CONCLUSION

For the reasons detailed above, Defendant Cahill's Motion to Dismiss or For Judgment as a Matter of Law is (Doc. No. 77) is **DENIED.**

**IT IS SO ORDERED** this 16th day of March, 2016.

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma