IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

PRE-PAID LEGAL SERVICES, INC., )
)
           **Plaintiff,** )
)
vs. ) Case No. 12-CV-346-JHP
)
TODD CAHILL, )
)
           **Defendant.** )

## OPINION AND ORDER

Before the Court is Plaintiff's Sealed Motion to Compel Term Searching of Electronically Stored Information (Doc. No. 99). After consideration of the briefs, and for the reasons stated below, the Motion is **GRANTED IN PART**.

### BACKGROUND

Plaintiff Pre-Paid Legal Services, Inc., now known as LegalShield,[1] brought this action against Defendant Todd Cahill, a former LegalShield associate, for breach of contract, misappropriation of trade secrets, and tortious interference with contract or business relations. (*See* Doc. No. 2-1). LegalShield accuses Cahill of, among other things, soliciting LegalShield associates to join his new company, Nerium, in breach of his agreement with LegalShield.

Earlier in this litigation, the parties entered into an Electronic Discovery Protocol, pursuant to which Cahill would provide his electronic devices, along with access to his social media sites, to a neutral vendor for copying, searching, and forensic examination. (*See* Doc. No. 100-4 (Electronic Discovery Protocol). LegalShield would then propose search terms to narrow the documents for possible production, subject to review by Cahill for privilege and responsiveness. (*Id.*). On August 28, 2015, LegalShield submitted a list to Cahill of proposed

---

[1] For ease of reference, the Court will use the name "LegalShield" to refer to Plaintiff throughout this Opinion and Order.

1

search terms to be used by the third-party vendor in the examination of Cahill's electronic data. (*See* Doc. No. 100-5). On October 21, 2015, Cahill submitted objections to many of the proposed name searches and proposed key word searches. (*See* Doc. No. 100-7). LegalShield responded on October 28, 2015, explaining the significance of each proposed term. (*See* Doc. No. 100-8). The parties then met and conferred in an attempt to resolve their dispute but were unable to do so. Accordingly, LegalShield filed this Motion to Compel, in which it argues the proposed terms are carefully tailored to the parties' claims and defenses and designed to generate evidence reasonably calculated to lead to the discovery of admissible evidence.

Cahill responds that his electronic devices contain millions of pages of documents in the universe being searched. Cahill notes that he did not object to 336 of the 456 proposed search terms, including 326 names, except with respect to the time frame proposed by LegalShield. Because the unobjected search terms provide LegalShield with adequate discovery, Cahill argues it would be disproportionate to the needs of the case to review millions of pages for the contentious terms. Cahill argues the proposed search terms are so broad that most of the multi-million pages would hit for those terms. Cahill alleges the amount in dispute in this case is "well below $50,000," which does not support a vast expense in reviewing millions of pages of irrelevant documents. (Doc. No. 101, at 4). LegalShield disagrees with Cahill's valuation of the case and with his other arguments.

## DISCUSSION

**I.     Legal Standard**

Under Federal Rule of Civil Procedure 26(b)(1),

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties'

resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Electronically stored information ("ESI") is subject to the same scope of discovery as other kinds of information. *See* Fed. R. Civ. P. 34(a) (allowing a party to serve a request to produce ESI "within the scope of Rule 26(b)"). Pursuant to Federal Rule of Civil Procedure 37(a), "a party may move for an order compelling disclosure or discovery" if another party fails to produce documents as requested under Rule 34. A discovery request should generally be allowed "'unless it is clear that the information sought can have no possible bearing' on the claim or defense of a party." *Estes v. ConocoPhillips Co.*, 2008 WL 1994918, at *2 (N.D. Okla. May 5, 2008) (quoting *Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 652 (D. Kan. 2004)). On a motion to compel ESI discovery, the nonmoving party has the burden to show that "the information is not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). Even if such a showing is made, "the court may nonetheless order discovery from such sources if the requesting party shows good cause" and the requested discovery (1) is not unreasonably cumulative or duplicative, (2) cannot be obtained from a more convenient, less burdensome, or less expensive source, (3) is not readily available to the party seeking discovery, and (4) is not outside the scope permitted by Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(B)-(C). Whether to compel ESI discovery lies within the court's discretion. *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 482 (10th Cir. 1995).

II.     **Cahill's General Objections**

    A.     **Volume of Data**

Cahill objects to term searching the ESI data because of the overall massive volume of data. (Doc. No. 100-7, at 1). LegalShield counters that the use of the search terms themselves

will reduce the volume to potentially relevant information. The Court agrees with LegalShield that the overall volume of data is not a proper basis for failing to run term searches over that data. Accordingly, the Court overrules Cahill's objection regarding the volume of data.

### B. Time Frame for Searching Data

Cahill objects to the proposed time period of the search with respect to every proposed term as overly broad. Cahill proposes any search should extend no further than August 13, 2014, two years after the original TRO was entered. Cahill argues Plaintiff has received more than two years of protection from Cahill's initiating contact with LegalShield associates. Therefore, Cahill argues, any further searching would be irrelevant to LegalShield's claims. Cahill also objects to searching as far back as August 1, 2011, on the ground that it will produce no relevant information.

With respect to the proposed end date, as explained in detail in this Court's Opinion and Order denying Cahill's Motion to Dissolve Preliminary Injunction (Doc. No. 115), Cahill remains subject to the preliminary injunction entered in this case on February 12, 2013. Cahill remains prohibited from initiating contact with LegalShield sales associates in order to recruit them to Nerium. Accordingly, the Court overrules Cahill's objection with respect to the proposed end date for searching the ESI data.

With respect to the proposed begin date, LegalShield argues Cahill likely began raiding, or planning to raid, LegalShield's sales force and misappropriating LegalShield trade secrets for at least a year prior to his departure. Cahill responds that LegalShield's only evidence in support of its claim is hearsay posted on Facebook by Kelly Feest, which refers to the recruiting of Cahill, not Cahill recruiting LegalShield associates. (Doc. No. 100-15).

4

The Court agrees with Cahill that the request for discovery for a year before Cahill joined Nerium is disproportionate to the needs of this case. LegalShield has not submitted any claim or evidence that Cahill violated his agreement with LegalShield prior to August 9, 2012. Cahill requests the discovery period begin on August 1, 2012. In the interest of fairness, the discovery begin date shall be approximately two months prior to Cahill's departure from LegalShield, on June 1, 2012.

### C. Confidentiality

Cahill objects that the proposed search terms would call for "confidential, proprietary and trade secret information belonging to Cahill and non-parties." (Doc. No. 100-7, at 2). LegalShield points out that the terms of the Protective Order ensure that documents will not be shared with anyone other than counsel, parties, and the third-party vendor. Therefore, any responsive documents are adequately protected. *See Freres v. Xyngular Corp.*, 2014 WL 1320273, at *4 (D. Utah Mar. 31, 2014) (concluding the ability to designate any sensitive, confidential, and proprietary information produced provided adequate protection to obviate any concerns about inappropriate disclosure of information). Cahill does not respond to this argument. Accordingly, the Court concludes the confidentiality of Cahill's documents is adequately preserved by the Protective Order, and no further restriction on discovery is required.

## III. Cahill's Specific Objections

### A. Nerium Corporate Officers and Field Leaders

Cahill objects to using search terms constituting names of owners, officers, high ranking leaders, or motivational speakers at Nerium—Amber Elise LLC, Amber Olson, Amber Olson Rourke, Dale Munger, Vanessa Munger, Vanessa Veneracion Munger, Danny Gasemy, David Byrd, Dennis Windsor, Jeff Olson, Jeffrey Olson, CEO Jeff Olson, Mark Smith, Mark O Smith,

Mark O Smith.com, Tammy Smith, and Renee Olson. LegalShield argues these terms are relevant, because Nerium and Jeffrey Olson, the founder of Nerium, have induced and supported the solicitation and misappropriation of LegalShield trade secrets by Cahill by enabling Cahill to offer LegalShield associates financial incentives and payment of legal fees for leaving LegalShield. LegalShield argues the other named leaders and advisors may be involved in these financial incentives, and Cahill may have "name-dropped" these individuals in sending recruiting messages to LegalShield associates.

Cahill argues these terms are (1) overly broad, confidential, and irrelevant; (2) not related to claims made; and/or (3) attempting to obtain information in an unrelated litigation.

The Court agrees with Cahill that these terms are overly broad and not reasonably calculated to lead to discovery of admissible evidence. To the extent Cahill "name dropped" these individuals or were involved in discussions regarding financial incentives in recruiting LegalShield associates, such communications would be captured by other terms to which Cahill does not object, such as the names of LegalShield associates who were allegedly targeted (*e.g.*, "Kelly Feest," "Mary Skinner," "Oliver Marshak," "Jordan Krampf," and "Cedric Moore"), and the below terms that the Court herein orders to be used in discovery (e.g., "bridge," "attorney"). Accordingly, LegalShield's Motion is denied with respect to these disputed names.

### B. LegalShield Corporate Officers

Cahill objects to using search terms constituting names of current or former LegalShield management and leaders—Alan Fearnley, Harland Stonecipher, John Long, Keri Prince, Melanie Lawson, Randy Harp, Rip Mason, Ralph Mason, Rip S Mason, and CEO Rip Mason. Cahill also objects to the term "MidOcean," which purchased LegalShield. LegalShield argues these terms are relevant, because (1) Cahill's solicitation of LegalShield associates often involved

disparaging LegalShield's management and MidOcean, (2) many of these LegalShield personnel also received invitations from Cahill to connect on LinkedIn and Twitter, and (3) Cahill complained to LegalShield leaders prior to his departure that former associates were attempting to recruit him to other companies, which demonstrates Cahill's knowledge that what he did later was wrong.

Cahill argues these terms are (1) overly broad, confidential, and irrelevant; and (2) not related to claims made. The Court agrees with LegalShield that these terms are relevant to the litigation and are reasonably calculated to lead to the discovery of admissible evidence. Particularly because the Court has limited the time frame for searching these terms to a begin date of June 1, 2012, the terms will be less likely to result in false hits. Accordingly, these names shall be used in searches.

### C. "Nerium

Next, Cahill objects to using the search term "Nerium." LegalShield proposes a further time restriction on the term "Nerium," from August 1, 2011 to November 1, 2012. LegalShield argues this term is sure to generate evidence regarding associates contacted by Cahill about Nerium.

Cahill argues this term is (1) overly broad, confidential, and irrelevant; and (2) not related to claims made. The Court agrees with LegalShield that this term, with appropriate time limitations, is likely to capture communications and documents that are relevant to the litigation. Whether this term generates evidence that may be relevant in other litigation is immaterial to this case. As explained above, the Court herein imposes limitations on the begin date for discovery. Accordingly, the term "Nerium" shall be searched for the period between June 1, 2012, and November 1, 2012.

7

D.     **"Over-Inclusive" General Terms**

Cahill argues a number of general terms are "over-inclusive" and will result in voluminous irrelevant data. LegalShield argues it has offered to limit the time frame for certain "high use" words, and it selected terms that evidence improper conduct. In addition, LegalShield agrees to withdraw certain terms that may result in excess volume—brand partner, BP, enroll, compensation, direct sales, direct marketing, network marketing, true residual, inbox me, in-box me, PM me, wine and cheese, wine & cheese, w&c, and w & c.

In its Motion, LegalShield groups the remaining terms by category:

1.     **"back office," "backoffice," "genealogy," "login," "log in," "log-in," "password"**

With respect to these terms, LegalShield argues they relate to LegalShield's trade secret associate information, which is password protected. LegalShield has alleged Cahill misappropriated this information by using it to solicit LegalShield sales associates to another network marketing company.

Cahill responds that many of these words are used in normal written communication and are so generic they will produce an enormous amount of irrelevant documents. The Court agrees with Cahill that the terms "login," "log in," "log-in," and "password" are generic terms that are unlikely to result in responsive documents on their own. However, the terms "back office," "backoffice," and "genealogy" are central to this case and less likely to result in voluminous non-responsive hits. Accordingly, the terms "back office," "backoffice," and "genealogy" shall be used in searches and the terms "login," "log in," "log-in," and "password" shall be excluded from searches.

2. **"new brand partner," "new preferred customer," "prospect," "prospect list," "recruit," "sponsor"**

With respect to these terms, LegalShield argues they represent different words used by Cahill and other Nerium brand partners to refer to their new recruits. Cahill does not offer any argument in favor of excluding any of these particular terms.

The Court concludes these terms are relevant to the litigation and are reasonably calculated to lead to the discovery of admissible evidence. Accordingly, these terms shall be used in searches.

3. **"advance commissions," "advanced commissions," "book of business," "business model," "chargebacks," "charge-backs," "charge backs," "compensation plan," "comp plan," "debit balance," "downline," "insurance," "my former business," "my previous business," "my prior business," "my former company," "my previous company," "my prior company," "new business," "new company," "previous CEO," "prior CEO," "new management," "residual"**

With respect to these terms, LegalShield argues they would show instances in which Cahill criticized LegalShield's business model, compensation structure, and management to solicit LegalShield associates to Nerium.

In response, Cahill argues the term "downline" would be caught by other terms and would allow LegalShield access to trade secrets. LegalShield proposes limiting the time frame for this search to August 1, 2011, to November 1, 2012. In light of the Court's order herein limiting the search begin date to June 1, 2012, it would not be unduly burdensome or disproportionate to the needs of this case to allow searching of the term "downline" for a limited time frame. The term is relevant to the litigation and reasonably calculated to lead to the discovery of admissible evidence. As explained above, the Protective Order in this case will adequately protect against inappropriate disclosure of any trade secrets. Accordingly, the term "downline" shall be used in searches for the period of June 1, 2012, to November 1, 2012.

Cahill does not attempt to explain why the remaining terms in this category are overly inclusive, and LegalShield has offered evidence in support of the relevance of many of these terms. Accordingly, the remaining terms in this category shall be used in searches.

4. **"bridge"**

With respect to this term, LegalShield argues it is relevant because Cahill promised associates a "bridge" of minimum commissions based on their compensation at LegalShield if they would join Nerium. LegalShield argues this term is not likely to generate false hits.

Cahill argues that this term is overly broad, that communications including this term would be caught by other terms, and that this term is so generic it would produce a large amount of irrelevant documents. The Court agrees with LegalShield that the term "bridge" is relevant to the litigation and not overly broad. LegalShield submitted evidence indicating Cahill used this term in recruiting. Accordingly, the term "bridge" shall be used in searches.

5. **"associate," "downline," "ring earner," "ring-earner," "organization," "upline"**

With respect to these terms, LegalShield argues they would identify communications in which Cahill boasted to others that he had recruited an associate in his or another's LegalShield "organization," "downline," or "upline," including successful associates known as "ring earners."

Cahill identifies these terms as overly inclusive but does not specifically address these terms in his Response. However, the Court concludes these terms, with the exception of "downline," "ring earner," and ring-earner," are generic terms that would likely capture a large volume of irrelevant documents. Communications that include these terms would likely be captured by other search terms. Accordingly, the terms "ring earner" and "ring-earner" shall be used in searches. As explained above, the term "downline" shall be used in searches for the time

10

period of August 1, 2011, to November 1, 2012. The remaining terms in this category shall be excluded from searches.

6. **"LS San Diego," "New Freedom Champions," "Team Freedom," "Team New Freedom," "Team Nerium"**

With respect to these terms, LegalShield argues they refer to groups of associates or brand partners to which Cahill belonged as a LegalShield associate or joined as a Nerium brand partner. Cahill allegedly referred to these organizations in attempts to recruit LegalShield associates.

Cahill identifies these terms as overly inclusive but does not specifically refer to them in his Response. The Court concludes these terms are relevant to the litigation and are not overly broad. Accordingly, these terms shall be used in searches.

7. **"attorney," "attorney fees," "attorney's fees," "arbitration"**

With respect to these terms, LegalShield argues they would identify communications in which Cahill solicited LegalShield associates, because Cahill offered to pay the legal expenses of recruits if LegalShield sued them. LegalShield also argues Nerium and Jeff Olson made the same promise to Cahill when he left LegalShield.

Cahill argues that these terms are overly broad, that communications including these terms would be caught by other terms, and that these terms are so generic they would produce a large amount of irrelevant documents. The Court agrees with LegalShield that these terms are relevant to the litigation and are not overly broad. LegalShield submitted evidence indicating that a promise to pay legal fees may have been used in recruitment of LegalShield associates. Cahill does not explain how Cahill would have used these terms in other unrelated communications. Accordingly, these terms shall be used in searches.

8. **"cross-recruit," "proselytize," "solicit," "attack"**

With respect to these terms, LegalShield argues they represent the solicitation of sales representatives from one network marketing company to another. LegalShield argues these terms would reveal what Cahill was told or told others concerning the propriety of soliciting or recruiting LegalShield associates.

Cahill identifies these terms as overly inclusive but does not specifically refer to them in his Response. The Court concludes these terms are relevant to the litigation and are not overly broad. Accordingly, these terms shall be used in searches.

9. **"first contact," "for legality reasons"**

With respect to these terms, LegalShield argues they would reveal communications with Cahill suggesting that the person solicited made first contact with Cahill or that Cahill asked them to say that they did.

Cahill identifies these terms as overly inclusive but does not specifically refer to them in his Response. The Court concludes these terms are relevant to the litigation and are not overly broad. Accordingly, these terms shall be used in searches.

10. **"message me," "new opportunity," "opportunity," "opportunities," "all star team," "elite leaders," "iPad," "Lexus," "financial freedom"**

With respect to these terms, LegalShield argues they are terms and phrases Cahill used on social media or otherwise to solicit others to Nerium or convince them to explore Nerium as an opportunity.

In his Response brief, Cahill argues the terms "opportunity" and "iPad" are generic but does not specifically refer to the other terms in this category. The Court concludes the terms "new opportunity," "all star team," "elite leaders," iPad," "Lexus," and "financial freedom" are relevant to the litigation and are not overly broad. Accordingly, these terms shall be used in

searches. However, the Court concludes the terms "message me," "opportunity," and "opportunities" are generic terms that would likely capture a large volume of irrelevant documents. Accordingly, these terms shall be excluded from searches.

11. **"mastermind"**

With respect to this term, LegalShield argues it is relevant because Cahill solicited LegalShield associates by texting or calling them on the pre-text of calling a "mastermind" meeting of LegalShield leaders to discuss LegalShield business. At the meeting, he instead allegedly told them he was leaving LegalShield to join another company and urged them to email him to find out where he was going. LegalShield alleges Cahill also participated in another "mastermind" meeting of associates in 2013 hosted by another LegalShield associate under similar pretenses.

Cahill identifies this term as overly inclusive but does not specifically refer to it in his Response. The Court concludes the term "mastermind" is central to this case and unlikely to result in voluminous non-responsive hits. Accordingly, this term shall be used in searches.

12. **"Paylution"**

With respect to this term, LegalShield argues it refers to an account in which Nerium deposits commissions to brand partners. Therefore, LegalShield argues this term is relevant to LegalShield's alleged damages in the form of Cahill's earnings as well as commissions received by Cahill as a result of sales or other activity by current or former LegalShield associates now at Nerium.

Cahill identifies this term as overly inclusive but does not specifically refer to it in his Response. The Court concludes this term is relevant to the litigation and not overly broad. Accordingly, this term shall be used in searches.

## CONCLUSION

For the reasons detailed above, Plaintiff's Sealed Motion to Compel Term Searching of Electronically Store Information (Doc. No. 99) is **GRANTED IN PART**.

**IT IS SO ORDERED** this 30th day of September, 2016.

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma